UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Meihua Yan, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:24-cv-05403 |
| | ) | |
| The Individuals, Partnerships and | ) | Honorable Sara L. Ellis |
| Unincorporated Associations Identified on | ) | |
| Schedule "A," | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF LAW AND FACT IN SUPPORT OF EMERGENCY MOTION TO
VACATE TEMPORARY RESTRAINING ORDER AS TO DEFENDANT FORIOUS**

**I.      INTRODUCTION**

Defendant Forious (Def. Nos. 1, 2 and 24) submits this memorandum of law in support of its emergency motion to vacate the TRO against it (Dkt. 11). Forious filed its emergency motion on Wednesday, July 3, 2024, the same day that this Court granted the *ex parte* TRO motion filed by Plaintiff Meihua Yan ("Yan"). Since Forious had no time to draft a same-day memorandum in support of that motion, it now submits the following supporting memorandum.

Yan filed this "Schedule A" case against a list of 32 defendants for allegedly infringing U.S. Patent No. D978,293 ("the '293 Patent"), which claims a faucet design. Yan filed its TRO motion under seal and Forious has not yet had access to Yan's TRO arguments. However, a side-by-side, three-way visual comparison between the claimed faucet design, the Forious faucet design, and a prior art faucet design establishes that every similarity between the claimed design and the Forious design also existed in the prior art design. Since a patent may not claim design features that already exist in the prior art, the scope of Yan's '293 Patent is extremely narrow. And the patent's protectable (novel) design features, undeniably, are absent in the Forious design. In

the face of Forious' non-infringement defense, Yan cannot establish a likelihood of success on the merits and therefore, cannot justify a TRO against Forious.

## II.    DISCUSSION

The test for obtaining a temporary restraining order is the same as that for a preliminary injunction. Fed. R. Civ. P. 65(b)(1)(A). A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). The movant must establish: "(1) a likelihood of success on the merits; (2) a lack of an adequate remedy at law; and (3) an irreparable harm will result if the injunction is not granted." *Lambert v. Buss*, 498 F.3d 446, 451 (7th Cir. 2007) (internal citations omitted). If the moving party meets these requirements, then the court balances the potential harm to each party and the public interest. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008).

Yan is not entitled to a TRO against Forious because it cannot establish a likelihood of success on its design patent infringement claim. In addition, Yan cannot show that Forious is causing him irreparable harm.

### A.    Likelihood of Success on the Merits

"To show a likelihood of success on the merits, a patentee must show that it will likely prove infringement of the asserted claims." *ABC Corp. I v. P'ships & Unincorporated Associations Identified on Schedule "A"*, 52 F.4th 934, 942 (Fed. Cir. 2022). "[A] plaintiff cannot meet his burden where the accused infringer raises a substantial question as to infringement or invalidity." *Scholle Corp. v. Rapak LLC*, 35 F.Supp. 3d 1005, 1009 (N.D. Ill. 2014). Accordingly, to support its TRO, Yan must demonstrate that the defense Forious raises here "lacks substantial merit." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.,* 239 F.3d 1343, 1350-51 (Fed. Cir. 2001).

Yan cannot justify its TRO against Forious because it cannot establish a likelihood of success in view of Forious' defenses. See *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 791 & n.4 (7th Cir. 2022) (internal quotation marks omitted) (the threshold likelihood of success prong of the preliminary injunction analysis "is often decisive.").

Determining whether a design patent has been infringed is a two-part test: (1) the court first construes the claim to determine its meaning and scope; and (2) the fact finder then compares the properly construed claim to the accused design. *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995). In comparing the patented and accused designs, the courts apply the "ordinary observer" test—*i.e.*, it will find infringement "[i]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008) (en banc) (quoting *Gorham Mfg. Co. v. White*, 81 U.S. (14 Wall.) 511, 528 (1871)).

In construing the "claim" in a design patent, the courts look to the patent "drawings" but also must "distinguish[ ] between those features of the claimed design that are ornamental and those that are purely functional" because design patents protect the former, not the latter. *Egyptian Goddess*, 543 F.3d at 679–80 (citations omitted). In the infringement analysis, the Court also must consider the prior art and compare the features of the claimed design to those of both the accused product and the prior art. *Lanard Toys, Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1342 (Fed. Cir. 2020). Both of these steps are important because if the primary design similarities between the claimed design and the accused design stem from design features that either are functional or exist in the prior art, then the "ordinary observer" test must focus primarily on the ornamental features that differ from the prior art. *Id.* at 1343.

The primary problem for Yan in the present case is that all of the major design similarities between the claimed '293 design and the Forious products are found in the prior art. The infringement analysis, therefore, necessarily focuses on the minor ornamental details. But even in these details, the Forious product either differs from the Yan '293 Patent or it includes details that also may be found in the prior art.

The Yan '293 Patent does not disclose a radically new design. More than ten years before Yan applied for his patent, others were patenting similar looking faucet designs. For example, the table below compares the Yan patent (left) with a Chinese prior art patent, CN 301531712 (attached as Exhibit A), from 2011:

| Yan '293 Patent (Application date: May 27, 2021) | Prior Art CN 301531712 (Issue date: April 27, 2011) |
| --- | --- |
|  |  |

As this table reflects, Yan's design copies the basic shape of the prior art faucet but differs in some details, such as the faucet length and the handle-top length.

In addition, more than two years before Yan applied for the '293 Patent, others already were selling very similar products in the marketplace. One example is a prior art faucet sold under the ProFlo® brand. Copies of the installation instructions (attached as Exhibit B) and specifications (attached as Exhibit C) for the ProFlo® faucet may be downloaded from that company's website.[1] Both documents bear a 2018 copyright date (on the lower right corner on the installation

---

[1] https://www.build.ca/part/PFWSC9860CP-LLC-1-2-2HDL-LEV-W-SPRD-LAV-CP (last visited July 7, 2024).

instructions and the lower left corner on the specifications). The installation instructions were revised on 11/29/19 (*see* lower left corner), and the specification was revised on 2/21/20 (*see* lower right corner). Since Yan did not apply for his patent until May 27, 2021, any product offered for sale before May 27, 2021, constitutes prior art. *See* 35 U.S.C. § 102(a)(1).

The table below[2] compares the Yan '293 Patent (center) with the ProFlo® prior art product (left) and the Forious product (right):

| ProFlo® Prior Art | Yan '293 Patent | Forious Product |
|---|---|---|
|  |  |  |

This table reflects that Yan's claimed design is extremely similar to the ProFlo® prior art. The shape, height and length of the faucet spout and faucet handles in Yan's '293 Patent also appear in the earlier ProFlo® design. This dominant feature, as Judge Durkin noted in a recent decision, therefore, may not be the focus of the infringement analysis:

> Where there is a "dominant feature" across the prior art, the patents in suit, and the accused products, "the focus of the infringement substantial similarity analysis in most cases will be on other features of the design." . . . In other words, the "shared dominant feature from the prior art will be no more than a background feature of the design, necessary for a finding of substantial similarity but insufficient by itself to support a finding of substantial similarity."

*Midwest Goods Inc. v. Breeze Smoke LLC*, Case No. 23-cv-5406, 2024 WL 2785066, at *6 (N.D. Ill. May 30, 2024) (citations omitted). In the *Midwest Goods* case, the Court noted that the dominant feature of the claimed "vape pen" design was the "oblong body with a contoured

---

[2] Larger versions of the photographs and diagrams are attached as Exhibit D.

mouthpiece at one end." *Id.* Since the dominant feature also appeared in the prior art, the Court essentially "subtracted" that feature in its comparison in order to focus on other features. *Id.* ("Subtracting the dominant feature of the prior art reveals several differences between the accused and claimed design."). Although the patent owner argued that the differences between these other features were "minor," the Court noted that these "minor" differences "plausibly stand out when the dominant oblong body and mouthpiece are removed from the equation." *Id.* (citing *ABC Corp.*, 52 F.4th at 942). Judge Durkin concluded that the patent owner had not established a likelihood of success on its design patent infringement claim, and he denied the patent owner's preliminary injunction motion.

The only "novel features" of Yan's '293 Patent—*i.e.*, the only two design elements that are not found in the ProFlo® design—are: (1) sharply angled corners on the faucet handles, the faucet spout and the base of the faucet handles and faucet spout (as distinct from the slightly rounded corners in the ProFlo® design); and the height of the handles is less than 1/3 of the total spout height (whereas the height of the handles in the ProFlo® design appears to be approximately 40% of the total spout height):

| ProFlo® Prior Art | Yan '293 Patent | Forious Product |
|---|---|---|
|  |  |  |

6



| ProFlo® Prior Art | Yan '293 Patent | Forious Product |
|---|---|---|

Accordingly, the novel elements of the Yan '293 Patent are limited to these two design features. In comparing the Yan '293 Patent to the Forious design, the hypothetical ordinary observer must assess the overall designs, while focusing on these two design features, which are the only "aspects of the claimed design that differ from the prior art." See *Egyptian Goddess*, 543 F.3d at 676. The Forious design, however, includes neither of these two design features. Like the ProFlo® design and unlike Yan's claimed design, the Forious design has slightly rounded corners on the faucet handles, the faucet spout, and the base of the handles and spout. Likewise, the height of the handles on the Forious design is approximately 40% of the total spout height.

Moreover, unlike the Yan '293 Patent, the mounting screws on the handles in the Forious design appear on the inward-facing handle surface:



| Yan '293 Patent | Forious Product |
|---|---|



| Yan '293 Patent | Forious Product |
|---|---|

The close similarity between the design in the '293 Patent and the ProFlo® design leaves the former with an extremely narrow set of novel design features—none of which are found in the Forious design. Accordingly, once the Court properly construes the scope of the Yan '293 Patent (which is a question of law), Yan cannot plausibly support an infringement claim against the Forious design.[3]

Forious also sells a second faucet product with a "waterfall" style spout (see image below).



---

[3] Courts typically wait until the summary judgment stage to determine whether the differences between claimed design and accused design are minor or significant in light of the prior art; doing so gives the court the benefit of expert testimony regarding the design features. *Midwest Goods*, 2024 WL 2785066, at *3. To the extent that the Court believes that it needs additional information to address the infringement issue, it should find that Yan has failed to establish a likelihood of success.

Since Yan's TRO motion remains under seal and since Yan has not served a copy on Forious' counsel, Forious does not know whether Yan accuses this product as well. In any event, to the extent that the Forious "traditional" style spout product does not infringe, its "waterfall" style spout product necessarily would not infringe as well.

### B. Irreparable Harm

Forious cannot directly rebut Yan's evidence of irreparable harm because it has not yet accessed that evidence—which is under seal. However, Forious notes that Yan's Patent issued nearly 17 months ago, on February 14, 2023. Forious is a well-established company that began selling its faucet more than a year ago. Accordingly, Yan has had more than a year to bring an infringement action against Forious. Yan cannot support a claim that this infringement claim— which now is more than a year old—suddenly carries an urgency that justifies the immediate, *ex parte* relief provided by a TRO.

Moreover, Forious is not a fly-by-night Amazon seller that will default and hide its funds. On the contrary, Forious has appeared in this case and has identified substantial defenses. In addition, Forious has filed a declaratory judgment action in this district against another competitor who complained to Amazon that Forious' faucet products infringed his design patent. *WenzhouFuruisi Jiancaiyouxiangongsi v. Ruoying Xing*, Case No. 1:24-cv-1136 (N.D. Ill.). While Forious is Chinese resident, so is Yan. Forious is not aware of any other basis for Yan to suggest that Forious is a collection risk.

## III.   CONCLUSION

Plaintiff cannot establish either a likelihood of success on its infringement claim or irreparable harm that would justify the extreme remedy of a TRO.  Accordingly, Forious asks this Court to issue an order vacating the TRO as to defendant Forious.


Dated: July 8, 2024                              Respectfully submitted,

/s/ Edward H. Rice
Edward H. Rice
Law Office of Edward H. Rice, LLC
555 Skokie Blvd., Suite 500
Northbrook, IL 60062
ed@edwardricelaw.com
(312) 953-4566

*Counsel for Defendant,*
*Forious*