UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Meihua Yan,<br><br>   Plaintiff,<br><br>  v.<br><br>The Individuals, Partnerships and Unincorporated Associations Identified on Schedule "A,"<br><br>   Defendants. | Case No. 1:24-cv-05403<br><br>Honorable Sara L. Ellis |

**MEMORANDUM OF LAW AND FACT IN SUPPORT OF EMERGENCY MOTION TO VACATE TEMPORARY RESTRAINING ORDER AS TO DEFENDANT FORIOUS**

**TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | DISCUSSION | | 1 |
| | A. | Yan Is Not Likely to Succeed on the Merits. | 2 |
| | | 1. The Accused Waterfall Design Does Not Infringe Yan's Design Patent. | 4 |
| | | 2. The Accused Standard Design Does Not Infringe Yan's Design Patent. | 5 |
| | B. | Yan Cannot Establish Irreparable Harm. | 9 |
| | C. | Yan Has No Lawful Claim for Past Damages and Cannot Justify an Asset Freeze. | 11 |
| | D. | TRO Bond. | 12 |
| III. | CONCLUSION | | 14 |

## TABLE OF AUTHORITIES

**CASES**      **Page(s)**

*ABC Corp. I v. P'ships & Unincorporated Associations Identified on Schedule "A",*
  52 F.4th 934 (Fed. Cir. 2022) ..................................................................................2

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.,*
  239 F.3d 1343 (Fed. Cir. 2001)..................................................................................2

*Apple Inc. v. Samsung Elecs. Co.,*
  735 F.3d 1352 (Fed. Cir. 2013) ................................................................................10

*Arctic Cat Inc. v. Bombardier Rec. Prods.,*
  876 F.3d 1350 (Fed. Cir. 2017)................................................................................11

*Arctic Cat Inc. v. Bombardier Rec. Prods.,*
  950 F.3d 860 (Fed. Cir. 2020).............................................................................11-12

*Charter Nat'l Bank & Tr. v. Charter One Fin., Inc.,*
  No. 01-cv-00905, 2001 WL 527404 (N.D. Ill. May 15, 2001)..................................2

*Coyne-Delany Co. v. Cap. Dev. Bd. of State of Ill.,*
  717 F.2d 385 (7th Cir. 1983) ...................................................................................12

*Doe v. Univ. of S. Indiana,*
  43 F.4th 784 (7th Cir. 2022) ......................................................................................2

*Egyptian Goddess, Inc. v. Swisa, Inc.,*
  543 F.3d 665 (Fed. Cir. 2008) (en banc)...............................................................3, 8

*Elmer v. ICC Fabricating, Inc.,*
  67 F.3d 1571 (Fed. Cir. 1995)................................................................................ 2-3

*Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.,*
  549 F.3d 1079 (7th Cir. 2008) ...................................................................................2

*Koninklijke Philips N.V. v. Thales DIS AIS USA LLC,*
  39 F.4th 1377 (Fed. Cir. 2022) ..................................................................................9

*Lambert v. Buss,*
  498 F.3d 446 (7th Cir. 2007) .....................................................................................2

*Lanard Toys, Ltd. v. Dolgencorp LLC,*
  958 F.3d 1337 (Fed. Cir. 2020).................................................................................3

*Mead Johnson & Co. v. Abbott Lab'ys,*
  201 F.3d 883 (7th Cir. 2000) ............................................................................. 12-13

*Midwest Goods Inc. v. Breeze Smoke LLC*,
  Case No. 23-cv-5406, 2024 WL 2785066 (N.D. Ill. May 30, 2024) ................................... 7-9

*Nike Inc. v. Wal-Mart Stores, Inc.*,
  138 F.3d 1437 (Fed. Cir. 1998) .................................................................................................11

*Scholle Corp. v. Rapak LLC*,
  35 F.Supp. 3d 1005 (N.D. Ill. 2014). .........................................................................................2

*SME Racks, Inc. v. Sistemas Mecanicos Para, Electronica, S.A.*,
  243 Fed. App'x 502 (11th Cir. 2007) .........................................................................................9

*Takeda Pharms. U.S.A., Inc. v. Mylan Pharms. Inc.*,
  967 F.3d 1339 (Fed. Cir. 2020) ................................................................................................10

*Wallace v. Ideavillage Prod. Corp.*,
  640 F. App'x 970 (Fed. Cir. 2016) .............................................................................................4

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) .......................................................................................................................2


**STATUTES AND OTHER AUTHORITIES**

35 U.S.C. § 102(a)(1) .......................................................................................................................6

35 U.S.C. § 287 .............................................................................................................................11

Manual of Patent Examining Procedure § 1503 (9th ed., Rev. 07.2022) ........................................5


**RULES**

Fed. R. Civ. P. 65(c) .....................................................................................................................12

**I.     INTRODUCTION**

This is no ordinary design patent Schedule A case.  Here, the patent owner Plaintiff Meihua Yan ("Yan") has essentially patented a design that was in the public domain and is asserting his patent in a TRO action timed to maximize the damage to his competitors.  Though he has failed to comply with the marking provisions of the patent statute and is entitled to no damages whatsoever, he has prevailed upon the Court to issue an order freezing the entire Amazon account of Defendant FORIOUS (Def. Nos. 1, 2 and 24) even though 90 percent of that account is attributable to sales of products having nothing to do with this lawsuit.  *See* Declaration of Chunhe Qiu ("Qiu Decl.") at ¶ 18.  To make matters worse, Yan has asserted a single design patent against two entirely different FORIOUS product designs—one of which is so fundamentally different from Yan's patented design that it is difficult to imagine how Yan, in good faith, could assert an infringement claim against it.  Further, Yan omitted this unquestionably non-infringing accused product design from his declaration (*See* Declaration of Meihua Yan[1] ("Yan Declaration") in support of Yan's TRO Motion at Exhibit 4), while nonetheless including the product in Schedule A for his TRO.  In other words, he requested an order banning FORIOUS from selling this design while failing to disclose it to the Court in his "infringement evidence."

FORIOUS should not be subjected to a TRO pending the outcome of the preliminary injunction proceeding.  FORIOUS therefore asks the Court to enter an order unfreezing its Amazon account and removing its products from the sales injunction imposed by the TRO.

**II.    DISCUSSION**

As a threshold matter, Yan is not entitled to a TRO in the first instance because he has essentially no likelihood of success and no support for his perfunctory irreparable harm arguments.

---

[1] Since Plaintiff did not provide file-stamped copies of its filings, FORIOUS is not able to provide Dkt. citations for Plaintiff's sealed documents.

The TRO test is the same as that for a preliminary injunction. *Charter Nat'l Bank & Tr. v. Charter One Fin., Inc.*, No. 01-cv-00905, 2001 WL 527404, at *1 (N.D. Ill. May 15, 2001). A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). The movant must establish: "(1) a likelihood of success on the merits; (2) a lack of an adequate remedy at law; and (3) an irreparable harm will result if the injunction is not granted." *Lambert v. Buss*, 498 F.3d 446, 451 (7th Cir. 2007) (internal citations omitted). If the moving party meets these requirements, then the court balances the potential harm to each party and the public interest. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008). Yan does not meet these criteria.

    **A.**     **Yan Is Not Likely to Succeed on the Merits.**

"To show a likelihood of success on the merits, a patentee must show that it will likely prove infringement of the asserted claims." *ABC Corp. I v. P'ships & Unincorporated Associations Identified on Schedule "A"*, 52 F.4th 934, 942 (Fed. Cir. 2022). "[A] plaintiff cannot meet his burden where the accused infringer raises a substantial question as to infringement or invalidity." *Scholle Corp. v. Rapak LLC*, 35 F.Supp. 3d 1005, 1009 (N.D. Ill. 2014). Accordingly, to support its TRO, Yan must demonstrate that the defense FORIOUS raises here "lacks substantial merit." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350-51 (Fed. Cir. 2001). Yan's inability to meet this prong of the TRO inquiry itself provides grounds for vacating the TRO. *See Doe v. Univ. of S. Indiana*, 43 F.4th 784, 791 & n.4 (7th Cir. 2022) (internal quotation marks omitted) (the threshold likelihood of success prong of the analysis "is often decisive.").

Determining whether a design patent has been infringed is a two-part test: (1) the court first construes the claim to determine its meaning and scope; and (2) the fact finder then compares the

properly construed claim to the accused design. *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995). In comparing the patented and accused designs, the courts apply the "ordinary observer" test—*i.e.*, it will find infringement "[i]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008) (en banc) (quoting *Gorham Mfg. Co. v. White*, 81 U.S. (14 Wall.) 511, 528 (1871)).

In construing the "claim" in a design patent, the courts look to the patent "drawings" but also must "distinguish[ ] between those features of the claimed design that are ornamental and those that are purely functional" because design patents protect the former, not the latter. *Egyptian Goddess*, 543 F.3d at 679–80 (citations omitted). In the infringement analysis, the Court also must consider the prior art and compare the features of the claimed design to those of both the accused product and the prior art. *Lanard Toys, Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1342 (Fed. Cir. 2020). Both of these steps are important because if the primary design similarities between the claimed design and the accused design stem from design features that either are functional or exist in the prior art, then the "ordinary observer" test must focus primarily on the ornamental features that differ from the prior art. *Id.* at 1343.

Yan obtained a TRO against six of FORIOUS' ASINs for allegedly infringing U.S. Patent No. D978,293 ("the '293 Patent"), which claims a faucet design. Three of the ASINs (B0C6LR8JNP, B0C6LNYNYQ, and B0C6LQKTS5) are faucet products with waterfall type spouts ("Accused Waterfall Design"). The remaining three ASINs (B0CJFHXSYT, B0CJFHWT5H, and B0CJFG5W4B) are faucet products with standard type spouts ("Accused Standard Design").

1. **The Accused Waterfall Design Does Not Infringe Yan's Design Patent.**

As depicted in the figures below, the '293 Patent (left) claims a faucet with a standard spout (*i.e.*, where the top is closed and the water flows from the underside of the spout). By contrast, the Accused Waterfall Design (right) has a faucet with a waterfall spout (*i.e.*, a spout that is partially open on top, where water flows over the edge):

| Yan '293 Patent | Accused Waterfall ASINs |
|---|---|
|  | |

Notably, Yan did not include screenshots of FORIOUS' Waterfall Design in support of his TRO motion (*See* Yan Declaration at Exhibit 4). Accordingly, Yan never indicated to the Court that he was intending to assert his '293 Patent against any designs other than standard spout designs.

The images above establish that the claimed design and the Accused Waterfall Design are sufficiently distinct where they would not appear to be substantially the same to an ordinary observer. *Wallace v. Ideavillage Prod. Corp.*, 640 F. App'x 970, 972 (Fed. Cir. 2016) ("In some instances, the claimed design and the accused design will be sufficiently distinct that it will be clear without more that the patentee has not met its burden of proving the two designs would appear 'substantially the same' to the ordinary observer[.]") (citing *Egyptian Goddess,* 543 F.3d at 678). The only way to argue that the designs are the same is by ignoring the glaring difference between a standard spout and a waterfall spout.

If Yan believed that the standard spout was not an important part of his design, he could have depicted it with broken lines. When an applicant depicts a design feature with broken lines rather than solid lines, this indicates that the feature is not part of his claimed design. *See* Manual of Patent Examining Procedure ("MPEP") § 1503.02 (9th ed., Rev. 07.2022) ("Structure that is not part of the claimed design, but is considered necessary to show the environment in which the design is associated, may be represented in the drawing by broken lines."). Conversely, any design features depicted in solid lines, by definition, are part of the claimed design and cannot be ignored. *See* MPEP § 1503.01. In this case, no "ordinary observer" would be deceived into thinking that the Accused Waterfall Design was *the same as* the patented '293 design.

Yan's infringement claim against the Accused Waterfall Design borders on frivolous. The fact that Yan obtained a TRO to bar FORIOUS from selling these plainly non-infringing designs during Amazon Prime Days raises concerns about Yan's good faith use of the Court process.

**2. The Accused Standard Design Does Not Infringe Yan's Design Patent.**

All the major design similarities between the claimed '293 design and the Accused Standard Design are found in the prior art. The infringement analysis, therefore, necessarily focuses on the minor ornamental details included in the '293 design that differ from the prior art. But even in these details, the Accused Standard Design either differs from the Yan '293 Patent or it includes details that also may be found in the prior art.

Yan's '293 design is not new. Others have been patenting and/or selling extremely similar looking faucet designs for over the past ten years. For example, the table below compares Yan's patent (left) with a product sold on Amazon.com in 2011 (center) and a Chinese prior art patent, CN 301531712 (attached as Exhibit A), from 2011:



These prior art references from 2011 are merely two products of many remarkably similar faucet designs (*see* Exhibit B), all of which were sold to the public during the decade before Yan applied for the '293 Patent. Exhibit B reflects that Yan's design copies the basic shape of the prior art but differs in small details, such as the curvature between the horizontal and vertical portions of the faucet and handles, as reflected in the comparison above.

In addition, more than two years before Yan applied for the '293 Patent, others already were selling very similar products in the marketplace. One example is a prior art faucet sold under the ProFlo® brand. Copies of the installation instructions (attached as Exhibit C) and specifications (attached as Exhibit D) for the ProFlo® faucet may be downloaded from that company's website.[3] Both documents bear dates that establish that the design is prior art to Yan's patent.[4]

---

[2] https://www.amazon.com/dp/B00KKN86NU.

[3] https://www.build.ca/part/PFWSC9860CP-LLC-1-2-2HDL-LEV-W-SPRD-LAV-CP (visited 7/7/2024).

[4] These documents both bear a 2018 copyright date (on the lower right corner on the installation instructions and the lower left corner on the specifications). The installation instructions were revised on 11/29/19 (*see* lower left corner), and the specification was revised on 2/21/20 (*see* lower right corner). Since Yan did not apply for his patent until May 27, 2021, any product offered for sale before May 27, 2021 is prior art. *See* 35 U.S.C. § 102(a)(1).

The table below[5] compares the Yan '293 Patent (center) with the ProFlo® prior art product (left) and the FORIOUS product (right):

| ProFlo® Prior Art | Yan '293 Patent | FORIOUS Product |
|---|---|---|
|  |  |  |

This table reflects that Yan's claimed design is extremely similar to the ProFlo® prior art. The shape, height and length of the faucet spout and faucet handles in Yan's '293 Patent also appear in the earlier ProFlo® design. This dominant feature, as Judge Durkin noted in a recent decision, therefore, may not be the focus of the infringement analysis:

> Where there is a "dominant feature" across the prior art, the patents in suit, and the accused products, "the focus of the infringement substantial similarity analysis in most cases will be on other features of the design." . . . In other words, the "shared dominant feature from the prior art will be no more than a background feature of the design, necessary for a finding of substantial similarity but insufficient by itself to support a finding of substantial similarity."

*Midwest Goods Inc. v. Breeze Smoke LLC*, Case No. 23-cv-5406, 2024 WL 2785066, at *6 (N.D. Ill. May 30, 2024) (citations omitted). In the *Midwest Goods* case, the Court noted that the dominant feature of the claimed "vape pen" design was the "oblong body with a contoured mouthpiece at one end." *Id*. Since the dominant feature also appeared in the prior art, the Court essentially "subtracted" that feature in its comparison in order to focus on other features. *Id.* ("Subtracting the dominant feature of the prior art reveals several differences between the accused and claimed design."). Although the patent owner argued that the differences between these other

---

[5] Larger versions of the photographs and diagrams are attached as Exhibit E.

7

features were "minor," the Court noted that these "minor" differences "plausibly stand out when the dominant oblong body and mouthpiece are removed from the equation." *Id.* (citing *ABC Corp.*, 52 F.4th at 942). Judge Durkin found that the patent owner failed to show a likelihood of success and denied the patent owner's preliminary injunction motion.

The only "novel features" of Yan's '293 Patent—*i.e.*, the only two design elements that are not found in the ProFlo® design—are: (1) sharply angled corners on the faucet handles, the faucet spout and the base of the faucet handles and faucet spout (as distinct from the slightly rounded corners in the ProFlo® design); and the height of the handles is less than 1/3 of the total spout height (whereas the height of the handles in the ProFlo® design appears to be approximately 40% of the total spout height) as illustrated in Exhibit F. Accordingly, the infringement analysis focuses these two "novel" design features. In comparing the Yan '293 Patent to the FORIOUS design, the hypothetical ordinary observer must assess the overall designs, while focusing on these two design features, which are the only "aspects of the claimed design that differ from the prior art." *See Egyptian Goddess*, 543 F.3d at 676. The FORIOUS design, however, includes neither of these two design features. Like the ProFlo® design and unlike Yan's claimed design, the FORIOUS design has slightly rounded corners on the faucet handles, the faucet spout, and the base of the handles and spout. *See* Exhibit F. Likewise, the height of the handles on the FORIOUS design is approximately 40% of the total spout height. *See* Exhibit F. Moreover, unlike the Yan '293 Patent, the mounting screws on the handles in the FORIOUS design appear on the inward-facing handle surface, as illustrated in Exhibit G.

The close similarity between the design in the '293 Patent and the ProFlo® design leaves the former with an extremely narrow set of novel design features—none of which are found in the Accused Standard Design. Accordingly, once the Court properly construes the scope of Yan's

8

'293 Patent, Yan cannot plausibly support an infringement claim against the Accused Standard Design.[6]

### B. Yan Cannot Establish Irreparable Harm.

Since Yan cannot come close to establishing a likelihood of success, the Court need not even delve into the other TRO factors. But even if it had a chance of success on the merits, Yan fails to show that it is likely to suffer irreparable harm. "A party seeking a preliminary injunction must establish that it is *likely* to suffer irreparable harm without an injunction." *Koninklijke Philips N.V. v. Thales DIS AIS USA LLC*, 39 F.4th 1377, 1380 (Fed. Cir. 2022) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)) (emphasis in original). "The mere possibility or speculation of harm is insufficient." *Id.* (citing *Winter*, 555 U.S. at 22 (rejecting the Ninth's circuit's "possibility" standard as "too lenient")); *see also SME Racks, Inc. v. Sistemas Mecanicos Para, Electronica, S.A.*, 243 Fed. App'x 502, 504 (11th Cir. 2007) (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)) (stating that an irreparable injury supporting injunctive relief "must be neither remote nor speculative, but actual and imminent").

Plaintiff's brief addresses irreparable harm in perfunctory fashion, stating that Yan is likely to suffer two primary forms of irreparable harm: (1) loss of customers' goodwill and (2) reputational harm. *See* Yan's Memorandum in Support of TRO Motion ("Yan's TRO Motion") at 5-6. Plaintiff's irreparable harm case relies entirely upon the Yan Declaration—which itself is conclusory and lacks any supporting injury figures, analysis or supporting evidence.

---

[6] Courts typically wait until the summary judgment stage to determine whether the differences between claimed design and accused design are minor or significant in light of the prior art; doing so gives the court the benefit of expert testimony regarding the design features. *Midwest Goods*, 2024 WL 2785066, at *3. To the extent that the Court believes that it needs additional information to address the infringement issue, it should find that Yan has failed to establish a likelihood of success.

The Yan Declaration addresses irreparable harm at paragraphs 17-22, which states only that defendants' allegedly infringing acts are damaging Yan's "commercial reputation and goodwill" and that this harm is "largely unquantifiable." Yan offers no details. Plaintiff cannot justify the rare and extraordinary relief of a preliminary injunction with speculation. *See Takeda Pharms. U.S.A., Inc. v. Mylan Pharms. Inc.*, 967 F.3d 1339, 1349 (Fed. Cir. 2020) (appellant failed to show a likelihood of irreparable harm with bare assertions of price erosion and loss of market share).

Moreover, an injunction is inappropriate when a patentee cannot establish a "causal nexus" establishing that the patented features drive consumer demand:

> To show irreparable harm, it is necessary to show that the infringement caused harm in the first place. Sales lost to an infringing product cannot irreparably harm a patentee if consumers buy that product for reasons other than the patented feature. If the patented feature does not drive the demand for the product, sales would be lost even if the offending feature were absent from the accused product. Thus, a likelihood of irreparable harm cannot be shown if sales would be lost regardless of the infringing conduct.

*Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1360 (Fed. Cir. 2013) (quoting *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1324 (Fed. Cir. 2012)). This issue alone is fatal to Yan's irreparable harm contention. Yan offers no evidence or argument of any kind to suggest that consumers are purchasing FORIOUS' products due to the patented features as opposed to other potential drivers of consumer demand (such as other product features, advertising, price, etc.). Accordingly, Yan fails to make a prima facie showing on the causal nexus issue. Absent a causal nexus, Yan's request for injunctive relief would leverage the '293 Patent "for competitive gain beyond that which the inventive contribution and value of the patent warrant." *Apple Inc.*, 735 F.3d at 1361 (quoting *Apple, Inc.*, 678 F.3d at 1374-75).

Moreover, Yan's delay in seeking a TRO belies his irreparable harm claims. Yan's '293 Patent issued nearly 17 months ago, on February 14, 2023. FORIOUS is a well-established company that began selling its faucets more than a year ago. *See* Qiu Decl. at ¶ 7. Accordingly, Yan has had more than a year to bring an infringement action against FORIOUS. Yan cannot support a claim that this infringement claim—which now is more than a year old—suddenly carries an urgency that justifies the immediate, *ex parte* relief provided by a TRO.

### C. Yan Has No Lawful Claim for Past Damages and Cannot Justify an Asset Freeze.

Yan sells products that embody the design in his patent. Dkt. 1 at ¶¶ 11-14. Accordingly, under the patent statute, Yan had an obligation to mark these products with his patent number. 35 U.S.C. § 287. The marking requirement applies to design patents as well as to utility patents. *Nike Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1440 (Fed. Cir. 1998). Yan also had an obligation to allege in his complaint that he complied with this patent provision. *Arctic Cat Inc. v. Bombardier Rec. Prods.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017) (the patentee bears the burden of pleading compliance with section 287). Yan's complaint includes no such pleading. This omission was not an accident. Yan in fact did not mark his product. *See* Declaration of Marina N. Saito at ¶¶ 5-9.

Yan's failure to mark, as a matter of law, bars his claim for past damages:

> In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice.

35 U.S.C. § 287. Yan provided no prior notice and cannot assert a claim for damages arising before he served the Complaint (the complaint service provides "notice" that starts the damage period). *See, e.g., Arctic Cat Inc. v. Bombardier Rec. Prods.*, 950 F.3d 860, 864 (Fed. Cir. 2020)

("If . . . a patentee makes or sells a patented article and fails to mark in accordance with § 287, the patentee cannot collect damages until it either begins providing notice or sues the alleged infringer . . . and then only for the period after notification or suit has occurred. . . .")

Since Yan possesses no damage claim, he cannot in good faith ask the Court to freeze FORIOUS' Amazon account. Even assuming FORIOUS infringes Yan's patent, no damages have accrued. Yet, Yan justifies the account freeze by referring to his non-existent damage claim:

> Plaintiff's Complaint seeks, among other relief, that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts. Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze to preserve relief sought by Plaintiff. . . .

Yan's TRO Motion at 10. Yan surely knows that he has not marked his product in compliance with section 287 and is not entitled—as a matter of law—to any damage claim. Yet, Yan convinced this Court not only to freeze FORIOUS' Amazon assets, but to order a freeze that is grossly disproportionate to sales of the products accused in this case. (The accused products comprise less than 10% of the funds in the FORIOUS Amazon account. *See* Qiu Decl. at ¶ 18.)

### D. TRO Bond.

If the Court does not relieve FORIOUS from the TRO, at a bare minimum, it should increase the TRO bond so that if FORIOUS defeats Yan's preliminary injunction motion, it can recover for the substantial losses it will incur under the TRO. FORIOUS estimates these losses to be between $115,000 and $130,000. *See* Qiu Decl. at ¶ 11.

The purpose of a TRO bond is "to pay costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). In the Seventh Circuit, "a prevailing defendant is entitled to damages on the injunction bond unless there is a good reason for not requiring the plaintiff to pay in the particular case." *Coyne-Delany Co. v. Cap. Dev. Bd. of State of Ill.*, 717 F.2d 385, 391 (7th Cir. 1983). "When setting the amount of security, district

courts should err on the high side" because in establishing damages for wrongful restraint from a TRO or preliminary injunction, a defendant is not automatically entitled to collect the full bond amount; it still must prove its loss. *Mead Johnson & Co. v. Abbott Lab'ys*, 201 F.3d 883, 888 (7th Cir. 2000). Accordingly, "[a]n error in setting the bond too high thus is not serious" but "an error in the other direction produces irreparable injury, because the damages for an erroneous preliminary injunction cannot exceed the amount of the bond." *Id.* (citations omitted). Accordingly, FORIOUS requests that—if it is not released from the TRO—the Court increase Yan's TRO bond by $175,000[7] to cover the damages the TRO will impose specifically upon FORIOUS (as distinct from the other defendants).

Finally, FORIOUS notes that, as part of his irreparable harm position, Yan argued that the defendants presented a collection risk because they are Chinese companies with no known U.S. assets. Yan's TRO Motion at 10. Ironically, Yan, too, is a Chinese individual with no U.S. assets of which FORIOUS is aware. Accordingly, if the Court does not release FORIOUS from the TRO and also does not increase Yan's TRO bond amount, FORIOUS likely will never recover compensation for any damages that Yan's TRO will cause.

---

[7] FORIOUS may in fact suffer significantly greater losses, including the value of the diminished Amazon ranking caused by the TRO.

13

### III. CONCLUSION

For these reasons, FORIOUS asks this Court to vacate the TRO as to defendant FORIOUS or in the alternative, to increase Yan's TRO bond as to FORIOUS by $175,000.

Dated: July 15, 2024

Respectfully submitted,

/s/ Marina N. Saito
Edward H. Rice
Marina N. Saito
Law Office of Edward H. Rice, LLC
555 Skokie Blvd., Suite 500
Northbrook, IL 60062
ed@edwardricelaw.com
marina@edwardricelaw.com
(312) 953-4566

*Counsel for Defendant,*
*FORIOUS*