UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Meihua Yan,<br><br>   Plaintiff,<br><br>  v.<br><br>The Individuals, Partnerships and<br>Unincorporated Associations Identified on<br>Schedule "A,"<br><br>   Defendants. | Case No. 1:24-cv-05403<br><br>Honorable Sara L. Ellis |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
VACATE TEMPORARY RESTAINING ORDER AS TO DEFENDANT KENES**

## I.  INTRODUCTION

Defendant Kenes submits this memorandum of law in support of its motion to vacate the

TRO against it (Dkt. 11). Yan filed this "Schedule A" case against a list of 32 defendants for

allegedly infringing U.S. Patent No. D978,293 ("the '293 Patent"), which claims a faucet design.

A cursory comparison between the claimed faucet design, the Kenes faucet design, and a prior art

faucet design originally presented by another defendant in this case, Forious (*see* Dkt. No. 14),

establishes that every similarity between the claimed design and the Kenes design also existed in

the prior art design.  Further, a patent may not claim design features that already exist in the prior

art, the scope of Yan's '293 Patent is extremely narrow. And the patent's protectable (novel) design

features, undeniably, are absent in the Kenes design.

Moreover, Kenes own faucet product sold on Amazon was expressly reviewed by the

examiner, and is listed on the face of the '293 Patent.  That the Kenes product is not cited as prior

art under Section 35 USC 102 or 103 is strong evidence that the Kenes design does not fall within

the scope of the '293 Patent, i.e., that it does not infringe.  Therefore, Yan cannot establish a

likelihood of success on the merits and therefore, cannot justify a TRO against Kenes.

## II.  DISCUSSION

The test for obtaining a temporary restraining order is the same as that for a preliminary injunction.  Fed. R. Civ. P. 65(b)(1)(A).  A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).  The movant must establish: "(1) a likelihood of success on the merits; (2) a lack of an adequate remedy at law; and (3) an irreparable harm will result if the injunction is not granted."  *Lambert v. Buss*, 498 F.3d 446, 451 (7th Cir. 2007) (internal citations omitted).  If the moving party meets these requirements, then the court balances the potential harm to each party and the public interest.  *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008).

Yan is not entitled to a TRO against Kenes because it cannot establish a likelihood of success on its design patent infringement claim.  In addition, Yan cannot show that Kenes is causing him irreparable harm.

### A.  Likelihood of Success on the Merits

"To show a likelihood of success on the merits, a patentee must show that it will likely prove infringement of the asserted claims."  *ABC Corp. I v. P'ships & Unincorporated Associations Identified on Schedule "A"*, 52 F.4th 934, 942 (Fed. Cir. 2022).  "[A] plaintiff cannot meet his burden where the accused infringer raises a substantial question as to infringement or invalidity."  *Scholle Corp. v. Rapak LLC*, 35 F.Supp. 3d 1005, 1009 (N.D. Ill. 2014).  Accordingly, to support its TRO, Yan must demonstrate that the defense Kenes raises here "lacks substantial merit."  *Amazon.com, Inc. v. Barnesandnoble.com, Inc.,* 239 F.3d 1343, 1350-51 (Fed. Cir. 2001).

Yan cannot justify its TRO against Kenes because it cannot establish a likelihood of success in view of Kenes' defenses. See *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 791 & n.4 (7th Cir. 2022) (internal quotation marks omitted) (the threshold likelihood of success prong of the preliminary injunction analysis "is often decisive.").

Determining whether a design patent has been infringed is a two-part test: (1) the court first construes the claim to determine its meaning and scope; and (2) the fact finder then compares the properly construed claim to the accused design. *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995). In comparing the patented and accused designs, the courts apply the "ordinary observer" test—*i.e.*, it will find infringement "[i]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008) (en banc) (quoting *Gorham Mfg. Co. v. White*, 81 U.S. (14 Wall.) 511, 528 (1871)).

In construing the "claim" in a design patent, the courts look to the patent "drawings" but also must "distinguish[ ] between those features of the claimed design that are ornamental and those that are purely functional" because design patents protect the former, not the latter. *Egyptian Goddess*, 543 F.3d at 679–80 (citations omitted). In the infringement analysis, the Court also must consider the prior art and compare the features of the claimed design to those of both the accused product and the prior art. *Lanard Toys, Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1342 (Fed. Cir. 2020). Both of these steps are important because if the primary design similarities between the claimed design and the accused design stem from design features that either are functional or exist in the prior art, then the "ordinary observer" test must focus primarily on the ornamental features that differ from the prior art. *Id.* at 1343.

Here, all of the major design similarities between the claimed '293 design and the Kenes products are found in the prior art. The infringement analysis, therefore, necessarily focuses on the minor ornamental details (faucet lever shape, etc.). As Defendant Forious stated in its recent motion to vacate the TRO "more than two years before Yan applied for the '293 Patent, others already were selling very similar products in the marketplace." *See* Dkt. No. 14, p. 5.

> One example is a prior art faucet sold under the ProFlo® brand instructions and the lower left corner on the specifications). Id., p. 3. The installation instructions were revised on 11/29/19 (*see* lower left corner), and the specification was revised on 2/21/20 (*see* lower right corner). Since Yan did not apply for his patent until May 27, 2021, any product offered for sale before May 27, 2021, constitutes prior art.
>
> *See* 35 U.S.C. § 102(a)(1). Id; *see also*
> https://www.build.ca/part/PFWSC9860CP-LLC-1-2-2HDL-LEV-W-SPRD-LAV-CP (last visited July 16, 2024).

The below table below compares the Yan '293 Patent (center) with the ProFlo® prior art product (left) and the Kenes product (right):

| ProFlo® Prior Art | Yan '293 Patent | Kenes Product |
|---|---|---|
| | | |

Yan's design is strikingly similar to the ProFlo prior art; the Yan design's faucet spout is the same shape, height, and length of the ProFlo prior art. Accordingly, this dominant feature must be discounted, or subtracted, in the infringement analysis. *See Midwest Goods Inc. v. Breeze Smoke LLC*, Case No. 23-cv-5406, 2024 WL 2785066, at \*6 (N.D. Ill. May 30, 2024) (citations omitted), where the Court denied the patent owner's preliminary injunction motion because the "minor differences" of the accused product "plausibly st[ood] out" when the

dominant features were removed from the equation by virtue of being present in the prior art. "Subtracting the dominant feature of the prior art reveals several differences between the accused and claimed design."  Id.

The close similarity between the '293 Patent and ProFlo® designs leaves the former with an extremely narrow set of novel design features—none of which are found in the Kenes design. The only novel features of Yan's '293 Patent—*i.e.*, the only two design elements that are not found in the ProFlo® design—are: (1) sharply angled corners on the faucet handles, the faucet spout and the base of the faucet handles and faucet spout (as distinct from the slightly rounded corners in the ProFlo® design); and the height of the handles is less than 1/3 of the total spout height (whereas the height of the handles in the ProFlo® design appears to be approximately 40% of the total spout height):

Accordingly, the novel elements of the Yan '293 Patent are limited to these two design features.  In comparing the Yan '293 Patent to the Kenes design, the hypothetical ordinary observer must assess the overall designs, while focusing on these two design features, which are the only "aspects of the claimed design that differ from the prior art."  See *Egyptian Goddess*, 543 F.3d at 676.  The Kenes design, however, includes neither of these two design features, or the features are materially different.   First, in the Yan '293 Patent, the faucet levers are the same width as the handle bases, giving the visual impression that the entire faucet handle is comprised of a single unit, i.e., that the handle it is cast in the same mold.



The Yan '293 Patent design

In contrast, the faucet levers in the Kenes design are clearly narrower than their bases. The resulting visual impression is that of a two-pieced faucet handle, wherein the narrower lever fits within a recess, or slot, of the handle base. This added ornamentation is absent in the Yan '293 design.



Kenes Design

Among other differences, the Kenes faucet design also discloses levers with rounded edges, unlike the straight lever edges in the Yan '293 Patent. A side-by-side comparison of the two designs is below:

6

| Yan '293 Patent | Kenes Product |
|---|---|





Moreover, the examiner specifically reviewed the Kenes design, "KENES Black Widespread Bathroom Faucet," which is listed on p. 2 of the Yan '293 Patent, but obviously did not believe it constituted prior art under 35 USC §§ 102 or 103. *See* Ex. A. Therefore, the examiner clearly did not believe the Kenes design is within the scope of the Yan '293 Patent's claims, likely because of the obvious differences noted above.





*See* Ex. A; *see also* Wolfgram Declaration, p. 4l *see also* https://www.amazon.com/KENES-Widespread-Bathroom-Faucet-KE-9050-2-P/dp/B0CLNTVMLY/ref=asc_df_B0CLNTVMLY/?tag=hyprod-20&linkCode=df0&hvadid=692875362841&hvpos=&hvnetw=g&hvrand=8531986554720907113&hvpone=&hvptwo=&hvqmt=&hvdev=c&hvdvcmdl=&hvlocint=&hvlocphy=9018800&hvtargid=pla-2281435180738&mcid=e576ef2e61173a64a3b9bc32a90180d4&hvocijid=8531986554720907113-B0CLNTVMLY-&hvexpln=73&gad_source=1&th=1

### B. Irreparable Harm

Yan cannot support a claim that this infringement claim—which now is more than a year old—suddenly carries an urgency that justifies the immediate, *ex parte* relief provided by a TRO. Kenes has been selling its faucet for over a year. Moreover, Kenes is not a Chinese micro-seller that will default and hide its funds. On the contrary, Kenes is a well-established company that has hired US counsel, appeared in this case, and identified substantial defenses. For the above reasons, Kenes respectfully requests that the Court dissolve the TRO and lift the asset freeze on Kenes's Amazon account.

DATED: July 17, 2024     Respectfully submitted,

             By: *<ins>/s/ Pete Wolfgram</ins>*
             Peter S. Wolfgram
             Stratum Law LLC
             2424 E. York St. Ste. 223
             Philadelphia, PA 19125
             pwolfgram@stratumlaw.com
             *ATTORNEY FOR PLAINTIFF*