UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Meihua Yan,<br><br>        Plaintiff,<br><br>    v.<br><br>The Individuals, Partnerships and Unincorporated Associations Identified on Schedule "A,"<br><br>        Defendants. | Case No. 1:24-cv-05403<br><br>Honorable Sara L. Ellis |

**OPPOSITION TO PLAINTIFF'S MOTION FOR ENTRY OF
A PRELIMINARY INJUNCTION AS TO DEFENDANT FORIOUS**

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................................. 1

II. DISCUSSION ........................................................................................................................ 2

    A. Yan Is Not Likely to Succeed on the Merits. ............................................................ 3

        1. The Accused FORIOUS Products Do Not Infringe Yan's Patent. ............. 5

            a) The Waterfall Design Does Not Infringe Yan's Patent. ................. 5

            b) The Accused Standard Design Does Not Infringe Yan's Patent. ................................................................................... 7

        2. The '293 Patent Is Likely Invalid. ............................................................. 9

    B. Yan Cannot Establish Irreparable Harm or Inadequate Remedy at Law. .............. 11

    C. Yan Cannot Claim Past Damages or Justify an Asset Freeze. ............................... 13

    D. The Balance of Harms Does Not Favor Yan. ........................................................ 15

    E. A PI is Not in the Public Interest. .......................................................................... 15

    F. Injunction Bond. .................................................................................................... 15

III. CONCLUSION .................................................................................................................... 15

**TABLE OF AUTHORITIES**

**CASES** Page(s)

*ABC Corp. I v. P'ships & Unincorporated Associations Identified on Schedule "A",*
 52 F.4th 934 (Fed. Cir. 2022) ...............................................................................................3, 4

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.,*
 239 F.3d 1343 (Fed. Cir. 2001)...................................................................................................3

*Amsted Indus. Inc. v. Buckeye Steel Castings, Co.,*
 24 F.3d 178 (Fed. Cir. 1994)......................................................................................................14

*Apple Inc. v. Samsung Elecs. Co.,*
 735 F.3d 1352 (Fed. Cir. 2013) ............................................................................................ 12-13

*Arctic Cat Inc. v. Bombardier Rec. Prods.,*
 950 F.3d 860 (Fed. Cir. 2020)............................................................................................... 14-15

*Courthouse News Serv. v. Brown*,
 908 F.3d 1063 (7th Cir. 2018) ....................................................................................................2

*Doe v. Univ. of S. Indiana*,
 43 F.4th 784 (7th Cir. 2022) ......................................................................................................3

*Egyptian Goddess, Inc. v. Swisa, Inc.,*
 543 F.3d 665 (Fed. Cir. 2008) (en banc)............................................................................... 3-4, 9

*Elmer v. ICC Fabricating, Inc.,*
 67 F.3d 1571 (Fed. Cir. 1995).....................................................................................................3

*GEFT Outdoors, LLC v. City of Westfield*,
 922 F.3d 357 (7th Cir. 2019) ......................................................................................................2

*Int'l Seaway Trading Corp. v. Walgreens Corp.,*
 589 F.3d 1233 (Fed. Cir. 2009)..............................................................................................9, 10

*Ixmation, Inc. v. Switch Bulb Co., Inc.,*
 No. 14-CV-6993, 2014 WL 5420273 (N.D. Ill. Oct. 23, 2014) ..............................................13

*Koninklijke Philips N.V. v. Thales DIS AIS USA LLC*,
 39 F.4th 1377 (Fed. Cir. 2022) .................................................................................................11

*Lans v. Digital Equip. Corp.,*
 252 F.3d 1320 (Fed. Cir. 2001)..................................................................................................14

*Mays v. Dart*,
 974 F.3d 810 (7th Cir. 2020) ......................................................................................................2

*Midwest Goods Inc. v. Breeze Smoke LLC*,
 Case No. 23-cv-5406, 2024 WL 2785066 (N.D. Ill. May 30, 2024) ..................................... 4-5

*Nike Inc. v. Wal-Mart Stores, Inc.*,
 138 F.3d 1437 (Fed. Cir. 1998) ................................................................................................13

*PHG Techs., LLC v. St. John Companies, Inc.*,
 469 F.3d 1361 (Fed. Cir. 2006) ................................................................................................10

*Redbox Automated Retail, LLC v. Xpress Retail LLC*,
 310 F. Supp. 3d 949 (N.D. Ill. 2018) .......................................................................................13

*Scholle Corp. v. Rapak LLC*,
 35 F. Supp. 3d 1005 (N.D. Ill. 2014) .........................................................................................3

*SME Racks, Inc. v. Sistemas Mecanicos Para, Electronica, S.A.*,
 243 Fed. App'x 502 (11th Cir. 2007) ......................................................................................11

*SRI Int'l, Inc. v. Advanced Tech. Lab'ys, Inc.*,
 127 F.3d 1462 (Fed. Cir. 1997) ................................................................................................14

*Super-Sparkly Safety Stuff, LLC v. Skyline USA, Inc.*,
 836 F. App'x 895 (Fed. Cir. 2020) .............................................................................................4

*Takeda Pharms. U.S.A., Inc. v. Mylan Pharms. Inc.*,
 967 F.3d 1339 (Fed. Cir. 2020) ................................................................................................12

*Turnell v. CentiMark Corp.*,
 796 F.3d 656 (7th Cir. 2015) .....................................................................................................2

*Wallace v. Ideavillage Prod. Corp.*,
 640 F. App'x 970 (Fed. Cir. 2016) ..................................................................................... 3, 5-6


**STATUTES AND OTHER AUTHORITIES**

35 U.S.C. § 102(a)(1) .......................................................................................................................8

35 U.S.C. § 287 ..............................................................................................................................13

Manual of Patent Examining Procedure § 1503 (9th ed., Rev. 07.2022) .......................................7


**RULES**

Fed. R. Civ. P. 65(c) .....................................................................................................................15

I.     **INTRODUCTION**

Plaintiff Meihua Yan ("Yan") asserts U.S. Patent No. D978,293 ("the '293 Patent") against two different faucet designs sold by FORIOUS. The first design is so fundamentally different from the '293 design that it is hard to imagine how Yan, in good faith, could assert an infringement claim against it. The second FORIOUS design is essentially identical to the prior art.

Yan undermines the legitimacy of his infringement analysis by ignoring the prior art altogether. Under Federal Circuit law, a design patent infringement analysis *requires* a three-way comparison between the claimed design, the accused design, and the prior art. The Court must consider the design as a whole while focusing on the *novel* elements that *distinguish* the claimed design from the prior art. Yan fails to perform this three-way comparison. Reading his brief, one might believe that Yan created an entirely new design unlike anything that came before it. But as detailed and illustrated below, at least a dozen prior art references prove otherwise: essentially nothing in Yan's claimed design is new. Accordingly, Yan has virtually no chance of success on the merits of his infringement claim—let alone a sufficient likelihood of success to support a preliminary injunction ("PI") motion. On this ground alone, Yan's PI motion fails.

Moreover, Yan fails to make a prima facie case for irreparable harm and seemingly abandons this issue altogether in his brief (Dkt. 30), which contains no argument supporting two of the initial prongs of the PI analysis: "irreparable harm" and "inadequate remedy at law." Even if Yan had any reasonable chance of success on the merits of his infringement claim, his failure to meet his evidentiary burden and his burden of persuasion on these two threshold requirements would doom his motion.

Further, Yan has no damage claim because he failed to comply with the marking provisions of the patent statute. He sold the patented product but never marked it with the patent number as the statute requires. Though he claims to have sent a cease and desist email to FORIOUS, the

email, which was not sent by Yan, simply notified FORIOUS that it potentially infringed one of the patents owned by a company called KES. In other words, the email not only failed to identify a patent number, but it also mis-identified the patent owner. Thus, the email provided no "actual notice" of infringement under the patent statute and Federal Circuit case law. With no damage claim, Yan has no right to any monetary relief under the patent statute and, therefore, has no conceivable justification for any asset restraint.

FORIOUS therefore asks the Court to deny Yan's PI motion and vacate Yan's TRO against FORIOUS.

## II. DISCUSSION

"A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need." *Turnell v. CentiMark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). Determining whether a party is entitled to injunctive relief entails a two-step analysis. *Id.* First, the moving party "must make a threshold showing that: (1) absent preliminary injunctive relief, [it] will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) [it] has a reasonable likelihood of success on the merits." *Id.* at 661-62. "If the plaintiff fails to meet any of these threshold requirements, the court must deny the injunction." *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019).

*If* the moving party's evidence meets this threshold showing, a district court then "proceeds to a balancing analysis, where the court must weigh the harm the denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if the court were to grant it." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). In this balancing analysis, the Court also evaluates the public interest. *Turnell*, 796 F.3d at 662. "Ultimately, the moving party bears the burden of showing that a preliminary injunction is warranted." *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018). Yan does not meet this burden.

2

### A. Yan Is Not Likely to Succeed on the Merits.

"To show a likelihood of success on the merits, a patentee must show that it will likely prove infringement of the asserted claims." *ABC Corp. I v. P'ships & Unincorporated Associations Identified on Schedule "A"*, 52 F.4th 934, 942 (Fed. Cir. 2022). "[A] plaintiff cannot meet his burden where the accused infringer raises a substantial question as to infringement or invalidity." *Scholle Corp. v. Rapak LLC*, 35 F. Supp. 3d 1005, 1009 (N.D. Ill. 2014). Accordingly, to support his PI motion, Yan must demonstrate that the defense FORIOUS raises here "lacks substantial merit." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350-51 (Fed. Cir. 2001). Yan cannot meet this prong of the PI inquiry, which alone provides grounds for denying the PI. *See Doe v. Univ. of S. Indiana*, 43 F.4th 784, 791 & n.4 (7th Cir. 2022) (internal quotation marks omitted) (the likelihood of success prong of the analysis "is often decisive.").

Determining whether a design patent has been infringed is a two-part test: (1) the court first construes the claim to determine its meaning and scope; and (2) the fact finder then compares the properly construed claim to the accused design. *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995). In comparing the patented and accused designs, the courts apply the "ordinary observer" test—*i.e.*, it will find infringement "[i]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008) (en banc) (quoting *Gorham Mfg. Co. v. White*, 81 U.S. (14 Wall.) 511, 528 (1871)).

The ordinary observer test proceeds in two stages. *See Wallace v. Ideavillage Prod. Corp.*, 640 F. App'x 970, 971-72 (Fed. Cir. 2016). "In some instances, the claimed design and the accused design will be sufficiently distinct that it will be clear without more that the patentee has not met its burden of proving the two designs would appear 'substantially the same' to the ordinary

3

observer[.]" *Id*. at 972 (citing *Egyptian Goddess,* 543 F.3d at 678). If the claimed and accused designs are found to be "plainly dissimilar" at this stage, then there is no infringement, and the inquiry ends. *See Super-Sparkly Safety Stuff, LLC v. Skyline USA, Inc.,* 836 F. App'x 895, 898 (Fed. Cir. 2020) (citing *Egyptian Goddess, Inc.,* 543 F.3d at 678).

"Where a patented design and an accused product are not 'plainly dissimilar,' the court must conduct a three-way analysis comparing the accused product, the patented design, and the prior art." *ABC Corp.*, 52 F.4th at 942. "When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to *those aspects of the claimed design that differ from the prior art*." *Egyptian Goddess*, 543 F.3d at 676 (emphasis added).

This three-way comparison is particularly critical where, as here, each of the three designs in the comparison include the same "dominant features." As Judge Durkin noted in a recent decision, when the same "dominant feature" is found in the claimed design, the accused design, and the prior art, that feature *may not* be the focus of the infringement analysis:

> Where there is a "dominant feature" across the prior art, the patents in suit, and the accused products, "the focus of the infringement substantial similarity analysis in most cases will be on other features of the design." . . . In other words, the "shared dominant feature from the prior art will be no more than a background feature of the design, necessary for a finding of substantial similarity but insufficient by itself to support a finding of substantial similarity."

*Midwest Goods Inc. v. Breeze Smoke LLC*, Case No. 23-cv-5406, 2024 WL 2785066, at *6 (N.D. Ill. May 30, 2024) (citations omitted).

In *Midwest Goods*, the Court noted that the dominant feature of the claimed "vape pen" design was the "oblong body with a contoured mouthpiece at one end." *Id*. Since the dominant feature also appeared in the prior art, the Court essentially "subtracted" that feature in its comparison and focused on other features. *Id.* ("Subtracting the dominant feature of the prior art

4

reveals several differences between the accused and claimed design."). Although the patent owner argued that the differences between these other features were "minor," the Court noted that these "minor" differences "plausibly stand out when the dominant oblong body and mouthpiece are removed from the equation." *Id.* (citing *ABC Corp.*, 52 F.4th at 942). Judge Durkin therefore denied the patent owner's PI motion. Judge Durkin's approach applies equally here.

1. **The Accused FORIOUS Products Do Not Infringe Yan's Patent.**

Yan seeks a PI against six FORIOUS ASINs for allegedly infringing the '293 Patent. Three ASINs (B0C6LR8JNP, B0C6LNYNYQ, and B0C6LQKTS5) are faucet products with waterfall-type spouts ("Waterfall Design"). The remaining three ASINs (B0CJFHXSYT, B0CJFHWT5H, and B0CJFG5W4B) are faucet products with standard type spouts ("Standard Design"). Under a *proper* analysis, Yan has no likelihood of success against either group of FORIOUS ASINs.

a) **The Waterfall Design Does Not Infringe Yan's Patent.**

As depicted in the figures below, the '293 Patent (left) claims a faucet with a standard spout (*i.e.*, where the top is closed and the water flows from the underside of the spout). By contrast, the Waterfall Design (right) has a faucet with a waterfall spout (*i.e.*, a spout that is partially open on top, where water flows over the edge):



| Yan '293 Patent | Waterfall Design |

The images above establish that the claimed design and the Accused Waterfall Design are sufficiently distinct on their face where they would not appear to be substantially the same to an

ordinary observer. *See Wallace*, 640 F. App'x at 972.

Yan's argument that above designs are "substantially the same" ignores the glaring difference between a standard spout and a waterfall spout. Rather than acknowledging and addressing this issue, Yan argues that "the designs are substantially similar when viewed as a whole," and he specifies those features that the designs have in common: "the handles are nearly identical" and "the faucets have the same general shape, including the squareness of the projection and flatness of the extension." (Dkt. 30 at 8). Yan ignores the fact that *each* of these common features existed in the prior art—which means (as a matter of law) the infringement analysis *cannot be* based on these features. In short, Yan's infringement argument relies entirely on the "dominant feature" from the prior art. This feature cannot support a finding of substantial similarity.

The table below includes just one example (the Dyconn design) of many prior art designs identified in Exhibit A[1]—all of which pre-date Yan's patent application. The Dyconn design reflects that the "similar" features on which Yan's infringement case rests—the general shape of the handles and the squareness of the faucet—are "dominant features" found in the prior art. In view of the prior art, the Court must relegate these features to the background or subtract them from the analysis entirely. Once the Court discounts these "dominant features," the conspicuous difference between the claimed invention and Waterfall Design becomes even more prominent. As a matter of law, Yan cannot gloss over this difference as if it were an insignificant detail.

Since the dominant design features of the '293 Patent all appeared in the prior art, the infringement analysis necessarily focuses on the *other* design features that *distinguish* the '293 design from the prior art. No "ordinary observer" focusing on the *novel* features of the claimed design could conceivably confuse the Waterfall Design with the claimed design. *Lanard Toys,*

---

[1] Exhibit A identifies several faucet designs that were available to the public for over a decade before Yan filed an application for the '293 Patent.

958 F.3d at 1342. Viewing the three-way comparison below, no rational viewer would ignore the spout shape (*i.e.*, standard vs. waterfall).

| Dyconn Faucet (*See* Exhibit A, Item 1) | Yan '293 Patent | Waterfall Design |
|---|---|---|
| | | |

Yan also cannot ignore the spout shape because he "claimed" it by depicting it in solid lines rather than broken lines. *See* Manual of Patent Examining Procedure ("MPEP") § 1503.02 (9th ed., Rev. 07.2022) ("Structure that is not part of the claimed design . . . may be represented in the drawing by broken lines."). Design features depicted in solid lines, by definition, are part of the *claimed* design and cannot be ignored. *See* MPEP § 1503.01.

In a proper infringement analysis—which includes claim construction and *necessarily* considers the prior art in a three-way comparison—Yan's infringement claim against the Waterfall Design borders on frivolous; it has essentially no likelihood of success.

      **b)**  **The Accused Standard Design Does Not Infringe Yan's Patent.**

Although the Standard Design does not differ from the '293 design as dramatically as the Waterfall Design, the infringement analysis is essentially the same and leads to the same conclusion because not one *novel* design element in the '293 design is found in the Standard Design. The Standard Design and the '293 Design appear similar only because they share the same "dominant features" that also exist in the prior art and that Yan cannot claim as his own.

In his brief, Yan does not perform a proper three-way infringement analysis. Rather, he

7

merely recites the general infringement standard and depicts the '293 design and the Standard Design in a *two-way comparison* that omits the prior art entirely. Dkt. 30 at 6-7. Yan's perfunctory infringement analysis does not acknowledge the prior art—even though FORIOUS identified numerous prior art references previously in the case. *See* Dkt. 18 at p. 6-7 and Dkt. 18-1, 18-2, 18-3 and 18-4.

The table below reflects a proper, *three-way analysis* that includes one of the many prior art references whose designs are nearly identical to the '293 design. As discussed above, the prior art provides essential context in identifying the "novel" ornamental features of Yan's design. One example is a prior art faucet sold under the ProFlo® brand (the installation instructions and specifications for the ProFlo® faucet are attached as Exhibits B and C, respectively).[2] Both documents bear dates that establish that the design is prior art to Yan's patent.[3]

The comparison below, reflects a remarkable similarity, as a whole, between the Yan '293 Patent and the ProFlo® Prior Art. These designs differ only in a few minor details.



| ProFlo® Prior Art | Yan '293 Patent | Standard Design |
|---|---|---|

Upon very close inspection, one can find two slight differences between the '293 design and the ProFlo® designs: (1) the former has sharply angled corners on the faucet handles and handle

---

[2] Downloaded from https://www.build.ca/part/PFWSC9860CP-LLC-1-2-2HDL-LEV-W-SPRD-LAV-CP.

[3] These documents both bear a 2018 copyright date. The installation instructions were revised on 11/29/19, and the specification was revised on 2/21/20. Since Yan did not apply for his patent until May 27, 2021, any product offered for sale before May 27, 2021 is prior art. *See* 35 U.S.C. § 102(a)(1).

8

base as well as the faucet spout and spout base—whereas these corners in the ProFlo® design are slightly rounded; (2) the ratio between handle height and spout height varies slightly in these two designs. In Yan's design, the handle height is less than 1/3 of the total spout height; in the ProFlo® design, the handle height is about 40% of the total spout height (*see* illustration in Exhibit D).

Under a proper infringement analysis, the hypothetical ordinary observer must assess the overall designs, while *focusing* on these two design features, which are the only "aspects of the claimed design that differ from the prior art." *See Egyptian Goddess*, 543 F.3d at 676. The Standard Design, however, includes *neither* of these two design features. On the contrary, the Standard Design—like the ProFlo® prior art and unlike the Yan design—has slightly rounded corners on the handles, the spout, and the base. *See* Exhibit D. Likewise, the handle height on the Standard Design—like the ProFlo® prior art and unlike the Yan design—is approximately 40% of the total spout height. *See* Exhibit D. Further, unlike the Yan '293 Patent, the mounting screws on the Standard Design handles appear on the inward-facing handle surface, as illustrated in Exhibit E.

The close similarity between the '293 design and the ProFlo® design leaves the former with an extremely narrow set of novel design features—none of which are found in the FORIOUS Standard Design. Accordingly, once the Court properly construes the scope of Yan's '293 Patent, Yan cannot plausibly support an infringement claim against the Standard Design.

### 2. The '293 Patent Is Likely Invalid.

As noted in the above infringement analysis, the differences between the prior art and Yan's '293 design are slight and very subtle. After reviewing the closest prior art references, one is left wondering whether an ordinary observer would perceive any meaningful distinction at all between '293 design and the prior art designs.

The test for anticipation (under 35 U.S.C. § 102) and for infringement is the same: whether

9

two designs appear "substantially the same" to an "ordinary observer." *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1240 (Fed. Cir. 2009). The difference between the anticipation and infringement analyses is that Court compares the claimed design to the prior art rather than the accused product. *Id.* at 1238. This rule follows the patent law axiom: "[t]hat which infringes, if later, would anticipate if earlier." *Id.* at 1239 (quoting *Peters v. Active Mfg. Co.*, 129 U.S. 530, 537 (1889)). Likewise, the same test applies to the obviousness analysis (under 35 U.S.C. § 103) "except that in the case of obviousness the features of the prior art could be combined to create a single anticipatory reference or an earlier single reference could be modified based on the knowledge of a skilled artisan." *Id.* at 1239.

Although at trial FORIOUS would bear the burden of proving invalidity (by clear and convincing evidence), to defeat Yan's PI motion, FORIOUS need only establish a "substantial question" of invalidity. *PHG Techs., LLC v. St. John Companies, Inc.*, 469 F.3d 1361, 1365 (Fed. Cir. 2006). FORIOUS more than meets that standard here.

The fact that the invalidity test is identical to the infringement test places Yan in an impossible situation. Yan has argued that an ordinary observer would consider the Waterfall Design and the '293 design as "substantially the same"—despite the conspicuous difference in the spouts. (Dkt. 30 at 8). If such a prominent design difference fails to distinguish an accused product from the '293 Patent, how can any relatively minor difference distinguish the prior art designs, such as the Dyconn Faucet, the ProFlo® Faucet or any of the other faucets identified in Exhibit A, from the '293 design? Notably, as the table on p. 7 (above) illustrates, the Dyconn Faucet is identical to the '293 design except that the handles are elevated above the base. The Dyconn and ProFlo® references, either alone or combined, raise a "substantial question" on invalidity that defeats Yan's likelihood of success and its PI motion.

10

### B. Yan Cannot Establish Irreparable Harm or Inadequate Remedy at Law.

"A party seeking a preliminary injunction must establish that it is *likely* to suffer irreparable harm without an injunction." *Koninklijke Philips N.V. v. Thales DIS AIS USA LLC*, 39 F.4th 1377, 1380 (Fed. Cir. 2022) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)) (emphasis in original). "The mere possibility or speculation of harm is insufficient." *Id.* (citing *Winter*, 555 U.S. at 22; *see also SME Racks, Inc. v. Sistemas Mecanicos Para, Electronica, S.A.*, 243 Fed. App'x 502, 504 (11th Cir. 2007) (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)) (irreparable injury "must be neither remote nor speculative, but actual and imminent").

Since Yan cannot succeed on the merits, the Court need not address the other PI factors. But even if Yan had a chance to succeed on the merits, he cannot show irreparable harm.

Yan's PI brief does not even address the "irreparable harm" or the "inadequate remedy at law" prongs of the PI analysis. Yan refers to these prongs in reciting the PI standard (Dkt. 30 at 5, 9); but he offers no supporting evidence or argument.

Yan appears to rely exclusively upon the Court's TRO order, arguing that Yan already has provided sufficient evidence on the irreparable harm issue. Dkt. 30 at 5. But the Court issued the TRO in an *ex parte* proceeding—based upon Yan's own conclusory, self-interested declaration. Yan's irreparable harm "evidence" cannot withstand scrutiny in this *inter partes* proceeding.

Yan's TRO motion addresses irreparable harm in perfunctory fashion, stating that Yan is likely to suffer two primary forms of irreparable harm: (1) loss of customers' goodwill and (2) reputational harm. *See* Yan's Memorandum in Support of TRO Motion[4] ("Yan's TRO Motion") at 5-6. Yan's irreparable harm case relies entirely upon the Yan Declaration—a conclusory statement by an interested party, which is entitled to little weight, particularly since it

---

[4] This document was filed under seal and bears no docket number.

11

lacks any supporting injury figures, analysis or supporting evidence.

This declaration addresses irreparable harm at paragraphs 17-22, where it states only that defendants' allegedly infringing acts are damaging Yan's "commercial reputation and goodwill" and that this harm is "largely unquantifiable." Yan offers no details or support. Yan cannot justify the rare and extraordinary relief of a preliminary injunction with speculation. *See Takeda Pharms. U.S.A., Inc. v. Mylan Pharms. Inc.*, 967 F.3d 1339, 1349 (Fed. Cir. 2020) (bare assertions of price erosion and loss of market share fail to establish a likelihood of irreparable harm).

But even assuming that Yan had presented credible evidence of harm to reputation and goodwill, he cannot establish a "causal nexus" linking the patented features to that harm:

> To show irreparable harm, it is necessary to show that the infringement caused harm in the first place. Sales lost to an infringing product cannot irreparably harm a patentee if consumers buy that product for reasons other than the patented feature. If the patented feature does not drive the demand for the product, sales would be lost even if the offending feature were absent from the accused product. Thus, a likelihood of irreparable harm cannot be shown if sales would be lost regardless of the infringing conduct.

*Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1360 (Fed. Cir. 2013) (quoting *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1324 (Fed. Cir. 2012)). This issue alone is fatal to Yan's irreparable harm contention. Yan offers no evidence or argument of any kind to suggest that consumers are purchasing FORIOUS' products *due to the patented features* of the '293 design.

This issue again highlights the core problem with Yan's case: the patented design is nearly identical to the prior art designs. To establish a causal nexus, Yan must show that *novel features of his design drive the consumer demand*. Otherwise, one might logically infer that consumers buy the accused products for the dominant design features (the overall square shape, etc.) rather than the "novel" features that distinguish the '293 Patent from the prior art. Yan cannot prove a causal nexus and he does not even try. The remarkable similarity between Yan's design and the prior art makes it nearly impossible for Yan to do so. Without this causal nexus, Yan's PI motion

against FORIOUS tries to leverage the '293 Patent "for competitive gain beyond that which the inventive contribution and value of the patent warrant." *Apple Inc.*, 735 F.3d at 1361 (quoting *Apple, Inc.*, 678 F.3d at 1374-75).

Additionally, Yan's delay in filing his infringement case undermines his irreparable harm claims. Yan's '293 Patent issued nearly 17 months ago, on February 14, 2023. FORIOUS began selling accused faucets more than a year ago. Accordingly, Yan has had more than a year to bring this infringement action against FORIOUS. He fails to explain why this infringement claim suddenly carries an urgency created by "irreparable harm." *See*, *e.g.*, *Redbox Automated Retail, LLC v. Xpress Retail LLC*, 310 F. Supp. 3d 949, 955 (N.D. Ill. 2018) (no irreparable harm where plaintiff delayed filing its trademark infringement suit for three months after sending cease and desist letter); *Ixmation, Inc. v. Switch Bulb Co., Inc.*, No. 14-CV-6993, 2014 WL 5420273, at *8 (N.D. Ill. Oct. 23, 2014) (no irreparable harm where plaintiff waited four and a half months before filing its motion for a preliminary injunction).

## C. Yan Cannot Claim Past Damages or Justify an Asset Freeze.

Yan sells products that embody the design in his patent. Dkt. 1 at ¶¶ 11-14. By law, Yan was obligated to mark these products with his patent number. 35 U.S.C. § 287. The marking statute applies to both utility and design patents. *Nike Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1442 (Fed. Cir. 1998). Yan's failure to mark, as a matter of law, bars his claim for past damages:

> In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice.

35 U.S.C. § 287. In design patent cases, a failure to mark bars recovery not only for damages (35 U.S.C. § 284), but also for profit disgorgement (35 U.S.C. § 289). *Nike, Inc.*, 138 F.3d at 1446. In his PI brief, Yan does not deny that he failed to mark his patented products with the '293 Patent

13

number as required by section 287. Rather, he suggests that he provided alternative notice to FORIOUS by way of a "cease-and-desist" letter transmitted in January 2024. This "cease-and-desist" email is the sole thread upon which his damage case hangs. But this email does not qualify as "actual notice" that meets the statutory requirement.

First, the email fails to identify the '293 Patent. As the Federal Circuit explained:

> actual notice requirement of § 287(a) is satisfied when the recipient is informed *of the identity of the patent* and the activity that is believed to be an infringement, accompanied by a proposal to abate the infringement, whether by license or otherwise.

*SRI Int'l, Inc. v. Advanced Tech. Lab'ys, Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997) (emphasis added); *see also Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1327 (Fed. Cir. 2001) ("if the patentee fails to mark, then he must give notice 'to the particular defendants by *informing them of his patent* and of their infringement of it'") (citation omitted; emphasis added). Yan's "cease and desist" email (Dkt. 30 at p.12) never identified the subject patent; it merely states "[t]he products sold by your company . . . infringe our patent."

Further, this email was not sent by Yan, the '293 Patent owner. Rather, it was sent by some individual on behalf of KES company who claimed that FORIOUS infringed one of the *KES patents* (of which KES allegedly has more than 230; Dkt. 30 at 7). The email, therefore, not only failed to identify the '293 Patent, but it also failed to identify the proper owner.

Section 287 places the burden of providing proper notice on the patentee: "[t]he correct approach to determining notice under section 287 must focus on the action of the patentee. . . ." *Amsted Indus. Inc. v. Buckeye Steel Castings, Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994). Having failed to mark his product, it was incumbent upon Yan to send a proper notice to initiate the damage period. Yan's failure to comply with section 287 precludes him, as a matter of law, from asserting any claim for compensation for any pre-filing infringement. *See, e.g., Arctic Cat Inc. v.*

14

*Bombardier Rec. Prods.*, 950 F.3d 860, 864 (Fed. Cir. 2020). Since Yan possesses no damage claim, he has no grounds for asking the Court to freeze FORIOUS' Amazon or Wayfair accounts.

D. **The Balance of Harms Does Not Favor Yan.**

Yan's sole argument on the "balance of harms" issue is his allegation that FORIOUS willfully infringed the '293 Patent after receiving Yan's "cease-and-desist" email. (Dkt. 30 at 9-10.) But as discussed above, Yan's email did not satisfy the marking statute, nor did he provide FORIOUS with notice of the '293 Patent. Accordingly, Yan has no plausible claim for willful infringement, and Yan has not established that the balance of harms weighs in his favor.

E. **A PI is Not in the Public Interest.**

Yan's sole "public interest" argument is: "the public is currently under the false impression that Plaintiff has granted a license or permission to Defendant with respect to the Design." (Dkt. 30 at 10.) Yan offers no evidence on this point. Given the number of comparable designs on the market, it is hard to imagine why consumers would associate the square faucet designs with Yan—as opposed to the dozens of companies that have sold strikingly similar designs and have done so long before Yan entered the market.

F. **Injunction Bond.**

The purpose of a PI bond is "to pay costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Yan's PI brief does not address the bond issue. If the Court grants Yan's PI motion, FORIOUS would ask the Court to set a briefing schedule to address the bond amount appropriate for the enjoined products.

III. **CONCLUSION**

For these reasons, FORIOUS asks this Court to deny Yan's PI motion.

Dated: July 25, 2024

Respectfully submitted,

/s/ Marina N. Saito
Edward H. Rice
Marina N. Saito
Law Office of Edward H. Rice, LLC
555 Skokie Blvd., Suite 500
Northbrook, IL 60062
ed@edwardricelaw.com
marina@edwardricelaw.com
(312) 953-4566

*Counsel for Defendant,
FORIOUS*