UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Meihua Yan, <br><br> Plaintiff, <br><br> v. <br><br> The Individuals, Partnerships and Unincorporated Associations Identified on Schedule A, <br><br> Defendants. | Case No. 1:24-cv-05403 <br><br> Honorable Sara L. Ellis |

**MEMORANDUM IN SUPPORT OF DEFENDANT FORIOUS'**
**MOTION TO MODIFY TEMPORARY RESTRAINING ORDER BOND AMOUNT**

The purpose of a Temporary Restraining Order ("TRO") bond is to compensate a party that has been wrongfully restrained from the "costs and damages" imposed by that restraint. The Seventh Circuit has instructed district courts to "err on the high side" when setting a TRO bond because the defendant may recover only the losses it can prove. An excessive bond is harmless because the defendant cannot recover any excess. An inadequate bond, by contrast, harms the defendant, which cannot recover more than the bond amount.

The Court entered a TRO on July 2, 2024, and that TRO will continue against Defendant WenzhouFuruisi Jiancaiyouxiangongsi ("FORIOUS") until the Court rules on the Plaintiff's preliminary injunction motion on September 18, 2024. During that 10-week period, FORIOUS is losing hundreds of thousands of dollars in lost sales and its Amazon rankings have plummeted. The TRO bond currently is set at $10,000 for all defendants, which does not begin to cover the costs and damages that the TRO will have imposed upon FORIOUS alone. Accordingly, FORIOUS moves to modify the bond amount as it relates to FORIOUS to correspond to the projected actual damage caused by the TRO, to which it is entitled under Fed. R. Civ. P. 65(c).

1

**DISCUSSION**

The purpose of a TRO bond is "to pay costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). In the Seventh Circuit, "a prevailing defendant is entitled to damages on the injunction bond unless there is a good reason for not requiring the plaintiff to pay in the particular case." *Coyne-Delany Co. v. Cap. Dev. Bd. of State of Ill.*, 717 F.2d 385, 391 (7th Cir. 1983). The policy behind the rule is straightforward: "Plaintiff brought the lawsuit, caused entry of a TRO, and has a responsibility to remedy its effect once it [the TRO] is no longer in place." *Bestway Inflatable Material Corp. v. Holon Supplier*, 2023 U.S. Dist. LEXIS 201062 at *6-7 (N.D. Ill. Nov. 8, 2023) (Durkin, J.)

"When setting the amount of security, district courts should err on the high side" because in establishing damages for wrongful restraint from a TRO or preliminary injunction, a defendant is not automatically entitled to collect the full bond amount; it still must prove its loss. *Mead Johnson & Co. v. Abbott Lab's*, 201 F.3d 883, 888 (7th Cir. 2000). Accordingly, "[a]n error in setting the bond too high thus is not serious" but "an error in the other direction produces irreparable injury, because the damages for an erroneous preliminary injunction cannot exceed the amount of the bond." *Id.* (citations omitted).

In this case, an equitable and appropriate bond amount is easy to calculate because it is based on essentially the same figures as the asset freeze, which the Court already has entered. The TRO bond has essentially the same purpose as the asset freeze: security. The asset freeze secures the Plaintiff's recovery if it prevails on its design patent infringement claim and, similarly, the TRO bond secures the Defendant's recovery if it defeats the preliminary injunction (and, thereby, establishes that it was harmed by the TRO). In this case, both the asset freeze and the TRO bond are computed based on Defendant's sales. The asset freeze is set at an amount that covers

Plaintiff's potential profit disgorgement remedy for design patent infringement.[1] The TRO bond is set at an amount that covers Defendant's lost profits—which establishes the minimum harm caused by TRO. *See Bestway Inflatables*, 2023 U.S. Dist. LEXIS 201062 at * 6 ("Plaintiff has a responsibility to return Defendants to the status quo upon the injunction being lifted."). In short, the asset freeze in this case secures Defendant's pre-TRO profits while the bond secures profits that would have been earned during the TRO.

Although the asset freeze in theory is limited to lost *profits*, which necessarily is less than total *revenue*, Plaintiff insisted that the asset freeze encompass the entire revenue number. If the parties are using revenue numbers to approximate profits (albeit erring on the high side) for the asset freeze, then they likewise should use the same approximation for the TRO bond. In this case, the calculation is easy because the asset freeze covers a 23-week sales period (between January 31, 2024 and July 11, 2024) and the TRO bond covers a 10-week sales period (from July 11, 2024 to September 18, 2024).[2] Accordingly, in the present case, the most equitable TRO bond would be a proportional estimate of the asset freeze, which is $665,000. The Court therefore should set the TRO bond at $290,000 (10 weeks / 23 weeks x $665,000). Erring on the high side will not harm Plaintiff and is explicitly sanctioned under Seventh Circuit law.

FORIOUS notes that the TRO also has harmed FORIOUS in other ways (beyond lost profits). Qiu Decl. at ¶ 9. These other harms are tangible but more difficult to quantify. For example, during the TRO period, the FORIOUS products have dropped dramatically in their

---

[1] See Memorandum in Support of Plaintiff's *Ex Parte* Motion for Entry of a Temporary Restraining Order (Filed June 27, 2024) at p. 10 (Plaintiff Meihua Yan requested the asset freeze to secure an "equitable accounting of Defendants' profits from sales of Infringing Products. . . .").

[2] The harm caused by the TRO is likely to last beyond September 18, 2024, which is the ruling date on Plaintiff's PI motion. Even if the Court enters an order on that date denying Plaintiff's motion for preliminary injunction and vacating the TRO, it will take days or longer for Amazon to re-instate the products de-listed per the TRO.

Amazon ranking, which is based on product sales volume. Qiu Decl. at ¶ 10. Immediately before the TRO restraint, the Amazon ranking for the accused FORIOUS "standard" design faucets was 27, and the Amazon ranking for the accused FORIOUS "waterfall" faucets was 77. Qiu Decl. at ¶ 11. As of this filing, those ranking numbers have dropped to the point where they are effectively no longer visible. Qiu Decl. at ¶ 11.

Amazon ranking has substantial value to sellers for many reasons. Qiu Decl. at ¶ 12. First, a higher product ranking typically means the product appears closer to the top of Amazon search results. Qiu Decl. at ¶ 13. This increased visibility can drive higher sales and, at the same time, reduce the seller's reliance on paid advertising (which can reduce marketing costs without sacrificing substantial sales). Qiu Decl. at ¶ 13. Second, shoppers often perceive products with better rankings as more popular and trustworthy. Qiu Decl. at ¶ 14. This perception can influence purchasing decisions, leading to higher conversion rates. Qiu Decl. at ¶ 14. Third, as the ranking improves and more customers view and purchase the product, it can create a positive feedback loop. Qiu Decl. at ¶ 15. An increase in ranking typically creates a boost in sales, which further improves the ranking—which leads to even more sales over time. Qiu Decl. at ¶ 15. Fourth, a high-ranking product can differentiate the seller from competitors, which can help the seller gain market share and outperform rivals. Qiu Decl. at ¶ 16. The longer a product is delisted, the more its ranking drops and the more the demand for that product shifts to competitors, increasing their product rankings. Qiu Decl. at ¶ 17. Even with significant investment spent re-promoting the product, a relisted product may never return to its original ranking and the loss becomes irreparable. Qiu Decl. at ¶ 18.

The TRO injunction has caused FORIOUS product rankings to plummet—which has caused FORIOUS to suffer real economic harm. Though FORIOUS presently cannot quantify

this harm, it will be able to do so through expert testimony at the appropriate time. This harm provides an additional reason for the Court to follow the Seventh Circuit's admonition to "err on the high side" when setting the bond amount. Again, an overestimate ultimately is harmless because FORIOUS cannot recover from the bond any losses that it cannot prove.

## CONCLUSION

FORIOUS asks the Court to modify the TRO bond in this case and to enter a bond of $290,000 to secure Plaintiff's TRO against FORIOUS.

Respectfully submitted,

Dated: August 26, 2024

/s/ Marina N. Saito
Edward H. Rice
Marina N. Saito
Law Office of Edward H. Rice, LLC
555 Skokie Blvd., Suite 500
Northbrook, IL 60062
ed@edwardricelaw.com
marina@edwardricelaw.com
(312) 953-4566

*Counsel for Defendant WenzhouFuruisi Jiancaiyouxiangongsi ("FORIOUS")*