**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| MEIHUA YAN, | |
| Plaintiff, | |
| v. | Case No.: 24-cv-05403 |
| THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", | **Honorable Sara L. Ellis** |
| Defendants. | |

**DECLARATION OF MEIHUA YAN IN RESPONSE TO**
**COURT ORDERED BOND INCREASE**

I, Meihua Yan, declare as follows:

1.  I am the named plaintiff in this case. Except as otherwise stated, I have personal knowledge of the matters set knowledge of the matters set forth herein and can and will testify thereto if called upon to do so.

2.  I declare, under the laws of the United States, that all statements made in the attached Exhibit A of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment.

Date: November 19, 2024

_Meihua Yan_
Meihua Yan

# EXHIBIT A

Honorable Judge,

I hereby submit a detailed explanation to the court regarding my inability to pay the $300,000 bond. I provide an overview of my efforts to raise funds and the actual obstacles encountered. Despite taking multiple measures to secure the bond as early as possible, external restrictions have prevented me from gathering the necessary funds. Below is a timeline detailing my attempts to raise and transfer the required amount.

### Personal Financial Situation

At present, my financial situation is constrained, leaving limited reserves for urgent expenses. Despite careful budgeting, I am currently unable to cover the full bond amount independently and must seek external financial support through loans and remittances to meet this requirement.

### Unaware of the Possibility of High Bond

I discovered infringing products on Amazon and sought an attorney to protect my intellectual property rights. I came across an article on a social media platform that listed various patent enforcement cases, including one handled by Davis & Carter, LLC. At that time, I had reached out to several law firms but struggled to afford the high legal fees they required. I learned about a method, where legal fees are deducted from the final settlement, making it more accessible for individuals like me with limited funds but a pressing need to address patent infringement. However, I was not informed that this approach carried the risk of incurring high bond fees.

Initially, the law firm informed me that a bond of $10,000 to $20,000 would be required. Upon hearing this, I did not have enough funds. After some discussion, they agreed to cover the bond upfront. However, later on, the firm requested that I pay the bond, and I was unable to raise the required amount, so I had to borrow from He Shan Shi Kai Xin Zhi Zao Shi Ye You Xian Gong Si, a company with cross-border remittance capability. However, I never anticipated that the bond would continue to increase, eventually reaching $300,000, an amount that far exceeded my financial capacity, and I simply could not afford it.

At the start, I had no idea how much funds Forious had been frozen, as the sales platform did not provide this information right away. Additionally, I did not realize that the platform's freezing policy would hold all the funds, not just the sales proceeds from the infringing products, which was never my intention. Had I been informed at that time that such a large amount of funds would be frozen, I might have chosen a different course of action to prevent freezing such a large sum. Furthermore, I had no understanding of the relationship between the bond and the frozen amount. I didn't know that the more funds that were frozen, the higher the required bond would be, and I was not informed of this by the law firm prior to starting the case. This was my first time pursuing intellectual property rights, and I was not familiar with, nor was I informed about, how patent compensation losses are calculated.

Davis & Carter, LLC's representation model did not require upfront payment of attorney fees, instead taking a substantial portion of the settlement compensation as their fee. All the funds I received from the infringement settlements have already been used to address the ongoing counterclaim, yet they are still insufficient to cover the current expenses, leaving the settlement compensation entirely depleted. I attempted to ask my previous lawyer to return part of the fees to help cover the bond, but they refused. Not only did I fail to obtain any actual compensation from this intellectual property enforcement effort, but I also now face enormous expenses that I am completely unable to pay.

**Efforts and Attempts to Secure Funds**

**1. July 9, 2024:** Initial Bond Payment
At the onset of the case (Civil Action No. 1:24-cv-05403), the court required a $10,000 bond. Since I lacked sufficient liquidity, the law firm Davis & Carter, LLC advanced this amount on my behalf.

**2. August 9, 2024:** Loan Repayment for Bond
One month later, I borrowed $10,000 from He Shan Shi Kai Xin Zhi Zao Shi Ye You Xian Gong Si, a company with cross-border remittance capability, and repaid Davis & Carter, LLC. Attached is the payment detail.
**Payment details:**
- Transaction time: 2024/08/09, 10:45:22 (GMT+08:00)
- Net amount: 10000.00 USD
- Payee name: DAVIS and CARTER LLC, IOLTA ACCOUNT
- Payee account number: 278088973
- Transaction ID: 2024080919028021400810

**3. September 3, 2024:** Personal Loan Requests
Anticipating an increase in the bond requirement due to the opposing party's motion, I approached my friend, Ms. Xiaofeng Lin, who has had successful experiences in investing in U.S. stocks and has previously made considerable profits. She resides in Yuexiu Xinghui Mingting, Jiangmen City, Guangdong Province. Although she is a close friend, she declined my $300,000 loan request due to the large amount involved.

**4. October 9, 2024:** Attempted Loan of $300,000
I requested a $300,000 loan from Ms. Huiru Li, a friend residing in Lianghua New Village, Jiangmen, Guangdong, who has relatives in the U.S. After reaching out to her relatives, however, they declined, citing high risks, making this avenue unsuccessful.

**5. October 10, 2024:** Remittance Restrictions
On October 10, 2024, at around 9:30 a.m., I visited the Jiangmen Branch of Postal Savings Bank of China to inquire about requirements for remittance to the U.S. Mr. Hu informed me that, according

to China's foreign exchange regulations, individuals are restricted to a maximum of $50,000 per year in overseas remittances. Having already reached this limit, I would be unable to send $300,000 even if I managed to secure the funds.

**6. October 16, 2024:** Further Loan Attempt

I attempted to borrow $300,000 from Ms. Miaotian He, a long-time friend residing in Kaifeng Garden, Shuikou, Kaiping, Guangdong, who owns a company engaged in cross-border trade and has remittance capability. Despite my request, Ms. He declined, citing high family and business expenses.

**7. October 24, 2024:** Bank Loan and Remittance Consultation

On the morning of October 24, 2024, at around 10:00 a.m., I visited the Xinhui District Office of Guangdong Rural Credit Cooperatives with my friend Ms. Shuyi Xie, who had recently obtained a loan in September and has well-established contacts at the bank. A staff member, Mr. Li, assisted us during the consultation. Regarding remittance, Mr. Li informed me that, under China's foreign exchange management policies, personal remittance abroad is strictly limited, with a maximum of $50,000 allowed per year. Upon checking, Mr. Li confirmed that I had reached my annual limit and could not proceed with additional remittances.

Concerning financing, Mr. Li required time to assess my situation before determining a loan amount. On November 1, 2024, at approximately 2:50 p.m., Mr. Li informed me that my loan application was declined. The reasons were that the intended use of the loan was outside the bank's acceptable scope and that my current income level was insufficient to meet loan repayment requirements.

**8. October 28, 2024:** Attempt to Secure a Loan from a Third-Party Institution

To raise the $300,000 bond, I contacted a domestic third-party lending institution, Jiangmen Zhongying Financing Guarantee Co., Ltd., on the morning of October 28, 2024. After a detailed discussion with their account manager, Mr. Zhang, I submitted a loan application, along with supporting documentation of my financial status, income, and collateral.

Given the large loan amount, the institution required additional clarification on the loan's purpose and a detailed repayment plan. I explained that the funds were intended to cover a court-mandated bond and provided relevant legal documentation. However, after internal review, the institution informed me that my application could not be approved for the following reasons:

-The institution's maximum lending limit was insufficient to meet my funding needs.

-The loan involved cross-border remittance, which carries stringent scrutiny for funds intended for legal proceedings, especially for such high-stakes cases.

Additionally, given my current credit and financial situation, the institution assessed the risk as too high to approve such a large loan.

**9. October 30, 2024, around 9:40 a.m.:** Further Inquiries with Third-Party Loan Institutions

I contacted two third-party lending institutions, Jiangmen Zhemiao Financial Institution and Jiangmen Xinhui District Xinying Microfinance Co., Ltd., to inquire whether I could use their cross-

border payment services for remittance. Both institutions informed me that foreign exchange management policies strictly enforce a $50,000 annual limit on personal overseas remittances, and splitting the funds into multiple transactions would not bypass this restriction.

In the afternoon, I visited Jiangmen Zhemiao Financial Institution in person with my friend, Ms. Xiaomin Ye, an entrepreneur with a company located in Xinghuayuan, Xinhui District, Jiangmen, Guangdong Province. She mentioned that she has a good relationship with the institution's head of lending and thought this might help relax loan conditions. However, Ms. Chen, the loan officer, confirmed once again that there was no effective way to meet my requirements.

**10. November 1, 2024, around 2:10 p.m.:** Requesting a Bank Statement
I returned to the Postal Savings Bank of China, Xinhui Branch, and scheduled a meeting with the client manager, Mr. Wu. After explaining my urgent legal needs in detail, I requested a written statement from the bank confirming the inability to process large remittances. Mr. Wu informed me that unless I attempted the actual remittance and encountered a failure, the bank would be unable to issue such a statement.

**11. November 4, 2024, around 3:00 p.m.:** Discussing Solutions with the Bank
Accompanied by my friend Mr. Maoliang Liu, who has experience in cross-border trade, I visited the Jiangmen Jiangqiao Road Branch of the Bank of China to inquire about loan and remittance options. The bank representative, Mr. Zhang, informed us that the Bank of China similarly could not process a loan for the purpose of cross-border litigation, and that the $50,000 annual remittance cap also applied. Although Mr. Zhang expressed sympathy for my urgent situation, he was unable to provide a viable solution for my needs.

**12. November 6, 2024, around 10:30 a.m.:** Consulting on Loan and Remittance with the Bank
I visited the Jiangmen Branch of CITIC Bank with my friend Ms. Meixiao Mai, who works in the financial industry and resides at Building 3, Unit 705, Yicuiyuan, No. 17 Shengping Road, Kaiping, Guangdong. The bank representative, Ms. Tan, informed me that under China's foreign exchange management policies, personal overseas remittances are strictly capped at the equivalent of $50,000 per year. After checking, she confirmed that I had already reached this annual limit. Additionally, my loan application was formally declined, as the intended use of the loan did not meet the bank's acceptable criteria.

13. **November 7, 2024:** Attempt to Borrow from Mr. Deng's Factory
At around 11:10 AM, I arrived at Mr. Deng's factory (Heshan Wochuang Hardware Co., Ltd, located at No. 53 North Industrial Avenue, Zhishan Town, Heshan City). They are involved in export business, familiar with international trade and cross-border transactions, and financially established. I attempted to borrow $300,000 from Mr. Deng, the owner, but he declined, citing poor business performance and insufficient liquidity, leaving no excess funds to lend. This avenue was unsuccessful.

14. **November 7, 2024:** Attempt to Borrow from Mr. Luo's Factory
Around 3:00 PM, I visited my friend Mr. Luo's factory (He shan shi zhi shan zhen tian ying wei yu

chang, located at: B District, Dongxi Development Zone, Zhi Shan Town, He Shan City). Their factory is engaged in cross-border e-commerce, and I attempted to borrow $300,000 from Mr. Luo. He similarly declined due to liquidity constraints and the need to secure loans for his own operations. This avenue was unsuccessful.

15. **November 11, 2024, around 10:00 AM:** Consultation at China Merchants Bank
I went alone to consult on loans and cross-border remittance at China Merchants Bank, Jiangmen Branch. Ms. Liang, a bank employee, stated clearly that my intended loan purpose was not within acceptable limits. She reiterated China's strict regulations on individual foreign currency remittances and said no exception could be made for my special circumstances.

16. **November 11, 2024, around 2:30 PM:** Visit to Ping An Bank with Ms. Shuping Lin
I visited the Jiangmen Branch of Ping An Bank with my friend Ms. Shuping Lin, who has relatives employed there, to inquire about loans and cross-border remittance. Mr. Li, a bank employee, said my loan purpose was unacceptable and reiterated China's strict limits on individual foreign currency remittances, explaining no exceptions could be made for my special case.

17. **November 14, 2024, around 10:00 AM:** Borrowing Attempt from Mr. Zhuoxiang Deng
I tried borrowing $300,000 from my friend Mr. Zhuoxiang Deng, who resides at No. 23, Xingfu Village, Kunzhong Village Committee, Zhishan Town, Heshan City and has a family business and relatives overseas. I requested his assistance in paying my bond, but he declined, explaining he needed funds for an upcoming house purchase. This avenue was unsuccessful.

18. **November 14, 2024, around 7:30 PM:** Attempt to Borrow from Ms. Yinxiao Tan
I attempted to borrow $300,000 from my friend Ms. Yinxiao Tan, who resides at No. 1-2, Alley 2, District 1, Lou Di Village, Honghua District, Shuikou Town, Kaiping City and runs a cross-border trading business. Ms. Tan responded that she currently lacked sufficient funds to assist me. This avenue was unsuccessful.

19. **November 15, 2024, around 10:30 AM:** Consultation at Rural Commercial Bank with Ms. Huichang Xu
I went with my friend Ms. Huichang Xu, who has experience with overseas study and remittances for relatives, to consult on loans and cross-border remittances at the Jiangmen Branch of Rural Commercial Bank. Mr. Wu, the bank employee, stated my loan purpose was not within acceptable limits, reiterating China's strict individual foreign remittance controls, and said no exception could be made for my special case.

20. **November 15, 2024, around 3:40 PM:** Attempt at Industrial and Commercial Bank of China with Mr. Weiwen Lei
I visited the Jiangmen Branch of the Industrial and Commercial Bank of China with my friend Mr. Weiwen Lei, who successfully processed a loan last year. The bank employee, Mr. Zhang, informed me that according to China's foreign exchange regulations, individuals may only remit up to $50,000 abroad annually, and upon checking, he confirmed I had already reached this limit for the year. Additionally, my loan application was declined as the intended use did not fall within acceptable

parameters.

**Conclusion and Request**

Despite my continuous efforts to secure the bond, including various loan attempts, bank inquiries, and consultations regarding remittance possibilities, the high loan amount, regulatory restrictions on foreign currency transactions, and personal financial constraints have prevented me from providing the required funds at this time.

**I declare, under the laws of the United States, that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment.**

Respectfully,

Meihua Yan

Meihua Yan