UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Meihua Yan, <br><br>         Plaintiff, <br><br>    v. <br><br> The Individuals, Partnerships and Unincorporated Associations Identified on Schedule "A," <br><br>       Defendants. <br> ------------------------------------------------- <br> WenzhouFuruisi Jiancaiyouxiangongsi ("Forious"), <br><br>     Defendant and Third-Party Plaintiff, <br><br>    v. <br><br> Heshan KES Sanitary Ware Limited, <br><br>     Third-Party Defendant. | Case No. 1:24-cv-05403 <br><br> Honorable Sara L. Ellis |

**MOTION FOR SANCTIONS UNDER RULE 11**
**OR UNDER THE COURT'S INHERENT AUTHORITY**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................. 1

      A.    Yan Initially Represented that She Owned KES. .................................... 2

      B.    Yan Later Denied that She Owned KES, but Both She and KES Admitted that
            KES Owned the KES Amazon Storefront. ............................................. 3

      C.    Yan and KES Now Claim that KES Does *Not* Own the KES Amazon Store. ....... 5

III.  DISCUSSION ..................................................................................................... 6

      A.    The Appropriate Sanction Here Is Dismissal with Prejudice and a Fee Award. .... 9

            1.    Dismissal with Prejudice............................................................. 9

            2.    Attorney Fees ........................................................................... 10

IV.   CONCLUSION.................................................................................................. 11

# TABLE OF AUTHORITIES

**CASES**                                                                 **Page(s)**

*Burda v. M. Ecker Co.*,
    2 F.3d 769 (7th Cir. 1993) ...................................................................6

*Jimenez v. Madison Area Tech. College*,
    321 F.3d 652 (7th Cir. 2003) ..............................................................9

*Xped LLC v. Entities Listed on Exhibit 1*,
    690 F. Supp. 3d 831 (N.D. Ill. 2023) ..................................7, 9, 10, 11


**RULES**

Fed. R. Civ. P. 11(b)(1)...........................................................................6

Fed. R. Civ. P. 11(b)(3)...........................................................................6

Fed. R. Civ. P. 11(b)(4)...........................................................................6

## I.    INTRODUCTION

Rule 11 imposes a duty of candor on parties and their counsel.  Their fact contentions must have evidentiary support or be reasonably based on a good faith belief.  Deliberate or reckless false statements that mislead the Court not only waste the Court's time and needlessly increase the cost of litigation but also threaten the integrity of the court system.  A party who has committed a fraud upon the Court also may be subject to the Court's inherent power to punish dishonest litigants and to deter others who might consider similar misconduct.  While this case has been plagued by various misconduct from the outset, Plaintiff Meihua Yan ("Yan") took this misconduct to another level when she misrepresented her relationship to Third-Party Defendant Heshan KES Sanitary Ware Limited ("KES")[1] and also misrepresented KES's role in operating the KES Amazon store.

Yan lied to prevent a court-ordered freeze of KES's assets—a measure necessitated by Yan's failure to comply with the Court's TRO bond order in the first instance.  In short, Yan lied to avoid facing the consequences of her repeated failure to comply with this Court's order.  This type of misconduct should not go unsanctioned.   Defendant and Third-Party Plaintiff WenzhouFuruisi Jiancaiyouxiangongsi ("Forious") therefore asks the Court to dismiss Yan's claim against it and order Yan to pay Forious' attorney fees in defending Yan's infringement claim. (At this point, Forious intends to proceed with its counterclaim against Yan, and its third-party claim against KES, for tortious interference with Forious' business expectation in its relationship with Amazon and its potential Amazon customers.)

## II.    BACKGROUND

As this Court has noted, Yan has changed her story multiple times in this case—to the point where it is not possible to know which of her statements are true and which are not

---

[1] As indicated below, Yan variously refers to KES as "China KES," "Heshan KES" or simply "KES."

> THE COURT: It has -- your client's story has changed multiple times over time, and it has wasted this Court's time, wasted resources, and frankly is sanctionable. If there weren't counterclaims here, I would dismiss the case with prejudice as a sanction. . . .

Dkt. 159 (4/8/25 Hearing Tr.) at p. 7, line 16 to p. 8, line 3. The statements below reflect the direct contradictions in Yan's story which has flipped entirely on the following two questions: (1) does Yan own KES; and (2) does KES own the "KES Faucet & Shower" store on Amazon ("KES Amazon Store"). These two questions are central to the Court's jurisdiction over KES as well as the fairness of freezing the KES Amazon Store account pending Yan's compliance with this Court's TRO bond order. And Yan lied about both.

## A. Yan Initially Represented that She Owned KES.

Initially, Yan led the Court to believe that she owned KES. In her supporting declaration for her TRO motion, Yan argued that Forious' alleged design patent infringement was causing irreparable harm to Yan *and her business*. For example, in her TRO declaration, Yan attached "photographs of authentic *Plaintiff Products*" in Exhibit 3. Dkt. 119-1 at ¶ 6, Yan Declaration[2]. This exhibit is an Amazon product listing depicting a faucet sold by the "*KES Faucet & Shower*" store on Amazon (emphases added). Yan also referred to harm to her "commercial reputation and goodwill," "possible diversion of customers," "consumer confusion and brand recognition." Dkt. 119-1 at ¶¶ 17-20. The Court entered Yan's requested TRO relying, in part, upon these representations. That TRO ultimately enjoined Forious' accused product sales for more than three months.

Likewise, in her preliminary injunction papers, Yan led the Court to believe that KES was her company. Yan argued that "*Plaintiff* took the additional steps of sending Forious a cease-and-

---

[2] Yan filed her TRO and supporting declaration under seal. It does not have a file number assigned to it. Forious later attached Yan's TRO declaration to another pleading in the case (Dkt. 119).

desist letter in January 2024, six months before filing the lawsuit, in an attempt to resolve this dispute" (emphasis added). Dkt. 30 at p. 8. In support of her statement, Yan attached to her memorandum an email sent to Forious from the email account of "Lily Dotson" and signed simply "*KES*." Dkt. 30 at PageID 259. This email also states that "*Plaintiff, and his [sic] company*, identify its protections including identifying that it has over 230 patent [sic] currently on the websites selling its products." Dkt. 30 at PageID 259 (emphasis added).

### B. Yan Later Denied that She Owned KES, but Both She and KES Admitted that KES Owned the KES Amazon Storefront.

Yan's story changed only after the Court granted Forious' motion to increase the TRO bond to ensure that it could obtain adequate compensation for wrongful restraint caused by the TRO. After Yan repeatedly failed to post the Court-ordered bond, Forious moved to freeze the KES account on Amazon until Yan saw fit to comply with the Court's order. At this point, Yan changed her story and now *denied* owning KES. For example, in her First Amended Answer to Forious' counterclaims, Yan outright denied the counterclaim allegation that "Yan owns, operates and/or controls KES." Dkt 112 at ¶ 10. Also, in her motion to set a briefing schedule on Forious' freeze motion, Yan stated that "Forious has a pending motion [Dkt. 93] to freeze China KES' assets, even though Defendant Forious incorrectly identified the assets as mine." Dkt 114 at ¶ 6. Yan also had her company KES deny her ownership: "China KES learnt that Defendant Forious has a pending motion [Dkt. 93] to freeze China KES' assets, even though Defendant Forious incorrectly identified the assets as Plaintiff Yan's." Dkt 113 at ¶ 4.

Counsel for Yan and her company KES also repeatedly represented to the Court that Yan did not own KES:

> there's no legal basis to freeze the Amazon store because there's no evidence connecting the Amazon store to plaintiff Yan. . . .

Dkt. 128 (11/20/24 Hearing Tr.) at p. 8, lines 5-7.

3

It is telling that the proposed order does not even specify the relationship between Yan and Heshan KES at all, *because no such relevant relationship to this case exists* and at the minimum, no such relationship has been proved in this case.

1/10/25 and 1/27/25 emails from counsel for Yan and KES to the Court (attached as Exhibits A and B).

At the time she denied owning KES, Yan never denied that KES owned and operated the KES store on Amazon. For example, as stated above, both Yan and KES acknowledged that Forious' motion to freeze the KES Amazon store was an action against KES's assets. Dkt 114 at ¶ 6 ("Forious has a pending motion [Dkt. 93] to freeze China KES' assets. . . ."); Dkt 113 at ¶ 4 ("China KES learnt that Defendant Forious has a pending motion [Dkt. 93] to freeze China KES' assets. . . ."). Counsel for Yan and KES also represented that the party affected by the Amazon Store account freeze would be "third party" KES:

. . . the assets are actually owned by a third party who was recently dragged into the case.

Dkt. 128 (11/20/24 Hearing Tr.) at p. 6, lines 5-8.

THE COURT: . . . If it happens that it's a third party's assets, that third party can come in, as any other third party could come in –

MR. LIU: That Party just did, Your Honor.

Dkt. 128 (11/20/24 Hearing Tr.) at p. 7, lines 14-17.

MR. LIU: . . . there's not legal basis to freeze the Amazon store because there's no evidence connecting the Amazon store to plaintiff Yan . . .

THE COURT: Well, then they can come back and file something.

MR. LIU: . . . I think that they did by filing the motion to dismiss. . . .

Dkt. 128 (11/20/24 Hearing Tr.) at p. 8, lines 5-11.

Second, the proposed order . . . goes on *freezing third party defendant Heshan KES Sanitary's assets.* This makes no sense. A party's asset cannot freeze without Due Process of law. . . .

4

> Third, . . . *Third party defendant Heshan KES Sanitary's assets should not be frozen* if the Court lacks personal jurisdiction over third party defendant Heshan KES Sanitary.

Exhibits A and B (emphases added).

Other evidence in the case likewise reflects that KES owns the KES Amazon Storefront.

For example:

- The KES Amazon Storefront identifes KES as the owner (Dkt. 142-6).

- KES executed a certificate under penalty of perjury stating that it owns the Amazon KES Storefront (Dkt 142-7).

- Yan filed a declaration with U.S. Patent and Trademark Office certifying that the products sold on the Amazon KES Storefront were her products (Dkt 142-8).

- Yan and Jinwei Huang executed a certification stating KES was selling Yan's products on the Amazon KES Storefront (Dkt 142-8).

### C.     Yan and KES Now Claim that KES Does *Not* Own the KES Amazon Store.

After Forious presented legal documents from China (signed by Yan) proving that Yan indeed owns KES, Yan (both directly and through her company KES) changed her story again. This time, she argued (as the following statements reflect) that her ownership of KES was irrelevant because KES did not operate the KES Amazon storefront:

> The Amazon store called KES Faucet & Shower is 100% owned by a third party, a southern California corporation called KES Hili Inc., which, in turn, is 100% owned by a fourth party, Mr. Jinwei Huang.

Dkt. 141 at p. 1. *See also* DKt. 141 at 7 ("the Amazon store called Kes Faucet & Shower is owned by Mr. Jinwei Huang and his 100% owned KES Hili Inc.").  KES then submitted a declaration from Mr. Jinwei Huang stating that:

> I am the sole owner of KES Hili Inc. and the Amazon Store called Kes Faucet & Shower.

Dkt 141-2 (3/26/25 declaration of Jinwei Huang).  Yan echoed this statement in her declaration:

In their renewed motion to freeze, Forious claims that the Amazon store "KES Faucet & Shower" is wholly owned by China KES, which is in turn owned by me. That is incorrect.

Dkt 141-1 (3/26/25 declaration of Meihua Yan),

## III. DISCUSSION

Through her conflicting stories and false representations, Yan perpetrated a fraud on the Court and abused the judicial process. These actions are sanctionable under Rule 11.

Rule 11 imposes on parties and their counsel an obligation to be truthful. Their factual representations to the court must "have evidentiary support" or be supportable after a reasonable opportunity for investigation. Fed. R. Civ. P. 11(b)(3). Likewise, their denials of factual contentions must be "warranted on the evidence." Fed. R. Civ. P. 11(b)(4). "Rule 11 does not require that the district court make a finding that the transgressor acted in bad faith." *Burda v. M. Ecker Co.*, 2 F.3d 769, 774 (7th Cir. 1993). The standard is an objective one: whether the party or counsel "should have known that the position was groundless." *Id*.

Rule 11 also prohibits parties and their counsel from presenting representations to the court for an "improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1).

Yan's multiple story changes and fabrications violated her Rule 11 obligation to be truthful. She and her counsel certainly know and have always known that Yan owns KES. And yet, they represented to the Court that she did not. Further, they misled the Court deliberately for an improper purpose—*i.e.*, to avoid the KES asset freeze that would impose consequences on Yan for her defiance of the Court's bond order. Likewise, Yan and her counsel know and have always known who owns the KES Amazon Storefront. Yet when confronted with inescapable evidence that Yan owns KES, they changed their story here as well—again for the purpose of defeating Forious' efforts to freeze KES's assets and force Yan to comply with the Court's bond order.

6

Although Rule 11 provides a "safe harbor" provision that gives the offending party a 21-day window to cure their misconduct (*e.g.*, by withdrawing or amending an offending pleading), that provision's "cure" function does not apply here because Yan's fraud on the Court is not curable. The Court already has relied upon Yan's false representations, and the damage Yan caused cannot be "cured" merely by withdrawing an offending pleading. Yan's fabrications have wasted the Court's time, delayed the litigation, multiplied Forious' litigation costs, and undermined the integrity of the court system. It is too late for Yan to withdraw its falsehoods without consequence. *See Xped LLC v. Entities Listed on Exhibit 1*, 690 F. Supp. 3d 831, 859 (N.D. Ill. 2023) ("Apart from harm to the Defendants, Jones's submission of a fraudulent certificate of service was also a serious breach of his obligations to the Court, which his subsequent remedial measures cannot undo.").

In the *Xped* case, the district court sanctioned a Schedule A trademark plaintiff that had asserted various misrepresentations on which the Court had relied in entering the plaintiff's requested TRO. The Court there stated that it was not possible for the defendant to meet the technical requirements of the Rule 11 safe harbor provision because of the proceeding's expedited nature. *Xped*, 690 F. Supp. 3d at 847. Since Rule 11 was inadequate to address the misconduct, the Court awarded sanctions under its "inherent power to sanction litigants and attorneys." *Id*. at 846.

In the present case, though Yan's conduct cannot be cured in response to notice provided under the Rule 11 safe harbor provision, Forious—for the sake of complying with the Rule's technical requirements—served Yan with a Rule 11 motion and notice letter, more than 21 days ago, on March 18, 2025. *See* Exhibit C. Although this motion focused on one particular pleading—Yan's answer to Forious' counterclaims (Dkt. 112)—the motion placed Yan and her

counsel on notice of the gravamen of Forious' sanctions claim; *i.e.*, Yan's representation that she does not own KES. In this pleading, for example, Yan flat-out denies that she "owns, operates and/or controls KES." *See* Dkt. 112 at ¶ 10. The Rule 11 motion that Forious served on Yan placed her on notice not only of the false answer in her pleading, but also with her underlying fabrication, which she has propagated elsewhere in this proceeding.

Although Yan amended her pleading, she did not correct her misrepresentations, as reflected in the following excerpt from her Second Amended Answer to Defendant Forious' Counterclaims:

> 10. Upon information and belief, Yan owns, operates and/or controls KES.
>
> RESPONSE: Yan denied this allegation, because it is compound and vague. For example, the phrase "and/or" is uncertain, and Yan is thus forced to speculate whether she is alleged to (1) own, operate, and control KES, or to (2) own, operate, or control KES. On this basis, Yan denies the allegation, because it is incapable of being answered at this time. Yan is willing to meet and confer with the opposing party about amending paragraph 10 and providing an amended response to the amended paragraph 10.

Dkt. 156 at ¶ 10. This amended answer is not a correction. It is an evasion. After being repeatedly admonished by the Court for her falsehoods,[3] Yan was given an opportunity to come clean. Instead, she and her counsel doubled-down with frivolous objections—unwilling to concede the undeniable fact that they lied to the Court and did so deliberately. Accordingly, while Yan's lies

---

[3] Dkt. 128 (11/20/24 Hearing Tr.) at p. 5, lines 6-11 (THE COURT: . . . I've given your client and you plenty of warning along the way that this case and whatever litigation strategy was behind it is quickly going to spiral out of control and in a direction that you don't want and didn't anticipate, and so this is where we are now."); Dkt. 158 (3/19/25 Tr.) at p. 6, lines 18-21 ("THE COURT: . . . at this point I would seriously be contemplating sanctions for, you know, what I believe to be plaintiff's continued pattern of ignoring court orders which are documented throughout this case."); Dkt. 159 (4/8/25 Hearing Tr.) at p. 7, lines 16-20 ("THE COURT: It has – your client's story has changed multiple times over time, and it has wasted this Court's time, wasted resources, and frankly is sanctionable. If there weren't counterclaims here, I would dismiss the case with prejudice as a sanction. . . .").

were never "curable," the safe harbor motion that Forious served on Yan fulfilled its notice obligations under Rule 11.

A.     **The Appropriate Sanction Here Is Dismissal with Prejudice and a Fee Award.**

1.     **Dismissal with Prejudice**

District court have broad discretion in determining the type of sanctions to impose for a Rule 11 violation. *Jimenez v. Madison Area Tech. College*, 321 F.3d 652, 657 (7th Cir. 2003). Dismissal with prejudice is an extreme sanction, but it is appropriate under Rule 11 "to deter repetition of the misconduct or to deter similar conduct by third parties." *Id.*; *see also Xped*, 690 F. Supp. 3d at 860 ("The Seventh Circuit has 'held that a dismissal with prejudice is an appropriate sanction for lying to the court in order to receive a benefit from it, because no one needs to be warned not to lie to the judiciary.'")  Likewise, dismissal may be appropriate "when the plaintiff has abused the judicial process by seeking relief based on information that the plaintiff knows is false." *Xped*, 690 F. Supp. 3d at 860.

Dismissal with prejudice is appropriate here—as the Court suggested at an April hearing[4]—for multiple reasons.

First, the nature of the sanctionable conduct is extreme.  Yan lied, deliberately, in pleadings and sworn statements to the Court.  That is not a minor Rule 11 violation; it is fraud on the Court. It is bad faith conduct that is exceptionally important to deter—not only for this case but to preserve the integrity of the judicial system.

Second, these lies were not harmless.  They were designed to obtain an undeserved benefit; to delay the freeze motion against KES and to help Yan avoid the consequences for defying the

---

[4] Dkt. 159 (4/8/25 Hearing Tr.) at p. 7, lines 16-20 ("It has – your client's story has changed multiple times over time, and it has wasted this Court's time, wasted resources, and frankly is sanctionable.  If there weren't counterclaims here, I would dismiss the case with prejudice as a sanction. . . .").

Court's bond order.  To this day, almost eight months after the bond order was entered, Yan has not posted her bond and Forious, therefore, is being deprived of the opportunity to obtain compensation for the harms it suffered from Yan's three-month TRO.

Third, despite multiple warnings by the Court and multiple opportunities to come clean, Yan and her counsel have continued to insist—in the face of irrefutable evidence to the contrary—that they did nothing wrong.  Dismissal with prejudice, therefore, is appropriate and necessary to punish Yan and her counsel and deter them from further misconduct.

Fourth, lesser sanctions not only would fail to deter such misconduct, but they arguably would encourage it.  The Court should not give Yan another opportunity to do what she and her counsel should have done from the outset: tell the truth and comply with the Court's rules.  Notably, the Court may dismiss Yan's complaint with prejudice without dismissing Forious' counterclaim against Yan or third-party claim against KES.

### 2.    Attorney Fees

An attorney fee award is appropriate here for at least three reasons.

First, a fee award will deter future misconduct by Yan and her counsel.  *See Xped*, 690 F. Supp. 3d at 859 ("The Court finds that awarding attorney's fees is appropriate and necessary [in addition to dismissal with prejudice] to deter future misconduct by parties and their counsel in the future.").

Second, a fee award will compensate Forious the extra legal fees attributable to Yan's misconduct.  Yan has changed her story so many times that it is difficult to know what facts concerning Yan are true and exactly when her deceptions began.  Arguably, it began with her declaration statements in support of her TRO motion.  If so, it would be proper for the Court to award all of Forious' legal fees.  If the lies began with her efforts to avoid the bond order and the

10

KES asset freeze, then it would be appropriate to award Forious its fees since that time, because since that time, the sole focus of this lawsuit has been on the bond and freeze matters.

Third, as the district court in *Xped* suggested, awarding attorney fees also serves the public interest by providing incentive for litigants to fight wrongful claims and abusive litigation tactics rather than capitulate because of financial hardship. *Xped*, 690 F. Supp. 3d at 859-60 ("It is necessary to incentivize what [defendant] did here: hire a lawyer, defend its interests on an expedited basis, and bring deception to the Court's attention.").

## IV.    CONCLUSION

Yan and her counsel have breached their duty of candor to this Court. They have lied about Yan's ownership of KES, they have misrepresented KES's ownership/control of the KES Amazon Storefront, and they have done so to mask Yan's connection to the KES Amazon Storefront and to evade the Court's bond order. Forious asks the Court to hold them accountable under Rule 11 by dismissing their case with prejudice (while leaving the counterclaim and third party claims intact) and by awarding Forious reasonable attorney fees attributable to Yan's misconduct.

Respectfully submitted,

Dated:  May 23, 2025

/s/ Marina N. Saito

Edward H. Rice
Marina N. Saito
Law Office of Edward H. Rice, LLC
555 Skokie Blvd., Suite 500
Northbrook, IL 60062
ed@edwardricelaw.com
marina@edwardricelaw.com
(312) 953-4566

*Counsel for Defendant WenzhouFuruisi
Jiancaiyouxiangongsi ("Forious")*