UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MEIHUA YAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 24 C 5403 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| THE INDIVIDUALS, PARTNERSHIPS and | ) |
| UNINCORPORATED ASSOCIATIONS | ) |
| IDENTIFIED ON SCHEDULE "A," | ) |
| | ) |
| Defendants. | ) |

**ORDER**

The Court denies Plaintiff Meihua Yan's motion to reconsider the bond amount [153]. The Court grants in part and denies in part Defendant Forious' motion for sanctions under Rule 11 or the Court's inherent authority [160] and denies Forious' motion for sanctions under 28 U.S.C. § 1927 [162]. The Court dismisses Yan's complaint with prejudice. The Court grants in part and denies in part Third-Party Defendant Heshan KES Sanitary Ware Limited's motion to dismiss [107]. The Court dismisses Forious' third-party complaint against Heshan KES without prejudice. See Statement.

**STATEMENT**

Plaintiff Meihua Yan sued 32 entities listed in Schedule A to her complaint for infringing her design patent, U.S. Patent No. D978,293 (the "'293 Patent"), which claims the "ornamental design for a faucet set." Doc. 1 at 12. On July 2, 2024, the Court entered an *ex parte* temporary restraining order ("TRO"), which prohibited Defendants from selling their allegedly infringing products and froze their assets located in various e-commerce business accounts. Doc. 13. Yan posted a $10,000 bond. Soon thereafter, a number of Defendants appeared, including Defendant WenzhouFuruisi Jiancaiyouxiangongsi ("Forious"), and began to contest Yan's claims. Of the 32 named Defendants, Yan has settled and dismissed 24.[1] And while this case now has over 170 docket entries, the vast majority of those relate to Yan's dispute with Forious.

Yan contends that two of Forious' faucets—a spout design and a waterfall design—infringe the '293 Patent. The Court has reproduced the designs below:

---

[1] Forious controls 3 of the 8 remaining named Defendants.



| '293 Patent | Forious Spout Design | Forious Waterfall Design |

Doc. 1 at 12; Doc. 39 at 9, 12.

Forious began vigorously defending itself against Yan's accusations the day after the Court entered the TRO, filing an emergency motion to vacate. The Court denied Forious' motion and granted Yan's motion for a preliminary injunction.[2] The Court later modified the asset restraint imposed on Forious based on the parties' joint petition so that only $665,000 of Forious' assets in its Amazon and Wayfair accounts remained restrained. Forious also filed a counterclaim and third-party complaint against Yan and Heshan KES Sanitary Ware Limited ("Heshan KES"), which Forious alleged sold faucet products with the patented design on Amazon and which Yan owned, operated, and/or controlled. Forious sought a declaratory judgment of non-infringement and invalidity of the '293 Patent and also brought a claim for tortious interference with prospective business relations against Yan and Heshan KES. On August 30, 2024, new counsel appeared for Yan. On September 27, 2024, the Court granted Forious' request to increase the bond amount that Yan posted, increasing the bond to $320,000, which the Court explained took "into account the number of defendants Plaintiff initially sued and the potential damages they may have incurred under the temporary restraining order and preliminary injunction." Doc. 86. Unable to post the bond, Yan moved to dissolve the TRO and preliminary injunction, with the Court dissolving these orders on October 10, 2024. This allowed Forious to resume sales of the accused products on Amazon and Wayfair, and lifted the restraint on Forious' assets. But Forious also sought to freeze Yan's assets for her failure to post the Court-ordered bond, seeking a freeze of the assets in Heshan KES' Amazon store, listed under the name KES Faucet & Shower (the "KES Amazon store"). The Court granted the order on November 20, 2024, but disputes about the content of the order dragged on for over six months as Yan and Heshan KES disputed that either of them owned or controlled the KES Amazon store. To that end, and to address Heshan KES' motion to dismiss Forious' counterclaim, the Court ordered the parties to engage in jurisdictional discovery to flesh out the connection between Yan and Heshan KES. The Court also referred the parties to a settlement conference before the magistrate judge. The magistrate judge made a settlement recommendation, which Forious represents it accepted, but Yan did not. In the meantime, Forious provided the Court with documents it had discovered showing that Yan owns over 99% of Heshan KES' stock. The Court entered the asset freeze order on July 25, 2025.

The Court now has before it several motions to resolve: (1) Yan's motion to reconsider the bond amount [153]; (2) Forious' motion for sanctions under Rule 11 or the Court's inherent

---

[2] Although the Court indicated in a minute entry that it granted Yan's motion for a preliminary injunction, no separate document memorializing the preliminary injunction was entered on the docket.

authority [160] and motion for sanctions under 28 U.S.C. § 1927 [162]; and (3) Heshan KES' motion to dismiss Forious' third-party complaint [107].

I.     Yan's Motion to Reconsider the Bond Amount

First, the Court addresses Yan's motion to reconsider the bond amount, in which Yan asks that the Court reduce the bond amount from $320,000 to $46,088.55. Yan indicates that this lower amount reflects her expert's calculation of the damages that Forious suffered during the TRO period.

A "court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "The appropriate amount of the bond is subject to the court's discretion." *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 910 (N.D. Ill. 2015). "[W]hen setting the amount of security, district courts should err on the high side." *Mead Johnson & Co. v. Abbott Lab'ys*, 201 F.3d 883, 888 (7th Cir. 2000).

Initially, Yan misunderstands the Court's basis for setting the $320,000 bond amount. Yan contends that the Court based this on Forious' representation that it lost $375,000 during the three-month product freeze. As the Court stated, however, the $320,000 took "into account the number of defendants Plaintiff initially sued and the potential damages they may have incurred under the temporary restraining order and preliminary injunction," not just Forious' alleged losses. Doc. 86.

The Court also does not find persuasive Yan's argument that the Court should decrease the bond amount because her expert has opined that Forious lost at most $46,088.55 during the three-month product freeze. True, Forious presented estimates of the revenue, not the profit, it lost over that period of time, but Yan did the same in connection with its requested freeze of Forious' assets. And Yan's expert does not consider Forious' lost sales on Wayfair. Moreover, the bond addresses not only Forious' potential losses but the losses of all parties that can prove they were wrongfully enjoined. At least 6 entities remain as Defendants who may make a claim on the bond. And even just considering Forious, Forious' CEO averred that over the 10-day period in July before Amazon delisted its faucets, it made a gross profit of $1,471 per day and expected to lose between $115,000 and $130,000 in gross profits between July 11, the date Amazon delisted Forious' products, and September 18, the date the Court initially indicated it would rule on the propriety of the injunction.

Therefore, keeping in mind the Seventh Circuit's advice that courts "err on the high side" in setting the bond amount, *Mead Johnson*, 201 F.3d at 888, the Court finds the $320,000 bond remains appropriate, even considering the smaller number of remaining Defendants and Yan's new expert report. The $320,000 bond amount does not automatically mean that Forious can recover that entire amount but instead merely caps the potential recovery by all parties on the bond. *Id.* To recover a specific amount, Forious will have to prove up its damages. *Id.*

## II.  Motions for Sanctions

Next, the Court turns to Forious' sanctions motions.  First, Forious asks the Court to dismiss Yan's claim against Forious and order Yan to pay Forious' attorney's fees in defending against Yan's claim as a sanction under Rule 11 or the Court's inherent authority.  Forious contends that Yan engaged in sanctionable conduct by deliberately misrepresenting her relationship to Heshan KES and Heshan KES' role in operating the KES Amazon store.  Forious posits that Yan made these misrepresentations to prevent the Court from freezing Heshan KES' assets in response to Yan's failure to comply with the Court's bond order

Rule 11 sanctions serve "to deter baseless filings in the district court."  *Cooney v. Casady*, 735 F.3d 514, 523 (7th Cir. 2013).  Under Rule 11, an attorney certifies that, "to the best of [her] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the contentions she makes in a filing are "not being presented for any improper purpose," "are warranted by existing law or by a nonfrivolous argument" for changing the law, and have evidentiary support. Fed. R. Civ. P. 11(b).  The Seventh Circuit has cautioned district courts to impose sanctions sparingly, *Hartmarx Corp. v. Abboud*, 326 F.3d 862, 867 (7th Cir. 2003), with the decision left to the Court's discretion, *Cooney*, 735 F.3d at 523.  The party seeking Rule 11 sanctions must serve the opposing party with a letter or demand "describ[ing] the specific conduct that allegedly violates Rule 11(b)" and then allow the opposing party twenty-one days to remedy the purportedly offending filing before presenting its sanctions request to the Court. Fed. R. Civ. P. 11(c)(2); *McGreal v. Vill. of Orland Park*, 928 F.3d 556, 559 (7th Cir. 2019).  The purpose of this safe-harbor provision "is to require parties to notify their opponents of possible frivolous arguments or claims contained in a [filing] and to give them [ample] opportunity to withdraw or correct that flawed [filing]." *Interface Sec. Sys., L.L.C. v. Edwards*, No. 03-4054, 2006 WL 8444029, at *16 (C.D. Ill. Mar. 30, 2006).  Thus, "a safe-harbor letter only authorizes a party to seek sanctions based on the grounds set forth in the letter." *Novoselsky v. Zvunca*, 324 F.R.D. 197, 204 (E.D. Wis. 2017).

Alternatively, "[a] district court may impose sanctions under its inherent authority 'where a party has willfully abused the judicial process or otherwise conducted litigation in bad faith.'" *Fuery v. City of Chicago*, 900 F.3d 450, 463 (7th Cir. 2018) (quoting *Tucker v. Williams*, 682 F.3d 654, 661–62 (7th Cir. 2012)).  For sanctions to be appropriate, a party must have acted in "bad faith, [in a way that was] designed to obstruct the judicial process, or [in] a violation of a court order.  Mere clumsy lawyering is not enough." *Id.* (citations omitted) (internal quotations omitted).  Pursuant to its inherent authority, the Court may impose the sanction "of dismissal with prejudice (or its equivalent, judgment) if the circumstances so warrant." *Barnhill v. United States*, 11 F.3d 1360, 1367 (7th Cir. 1993).  Determination of the appropriate sanction is left to the discretion of the district court. *Id.*  "[T]he inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 49 (1991).

Forious served a Rule 11 letter on Yan, notifying her that she misrepresented her ownership of Heshan KES in her answer to Forious' counterclaims.  Doc. 160-3 at 2.  In response to the allegation that "[u]pon information and belief, Yan owns, operates and/or controls [Heshan] KES," Yan responded by denying the allegation. Doc. 110 at 4.  In light of

4

subsequent evidence that Forious discovered showing that Yan owns 99.0099% of Heshan KES, Doc. 134-12, Forious claims that Yan's denial violates Rule 11(b)(4), which requires certification that the "denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or lack of information." Fed. R. Civ. P. 11(b)(4). Yan attempted to remedy this by filing an amended answer, which in relevant part reads as follows:

> 10. Upon information and belief, Yan owns, operates and/or controls [Heshan] KES.
>
> RESPONSE: Yan denied this allegation, because it is compound and vague. For example, the phrase "and/or" is uncertain, and Yan is thus forced to speculate whether she is alleged to (1) own, operate, and control [Heshan] KES, or to (2) own, operate, or control [Heshan] KES. On this basis, Yan denies the allegation, because it is incapable of being answered at this time. Yan is willing to meet and confer with the opposing party about amending paragraph 10 and providing an amended response to the amended paragraph 10.

Doc. 156 at 4. This, however, does nothing to address the issue that Forious identified in its Rule 11 letter and instead merely seeks to find some basis, albeit frivolous, to explain away Yan's deliberate misrepresentation of her relationship with Heshan KES. The Court thus finds Yan's conduct in this regard sanctionable.

      Moreover, this misrepresentation in Yan's answer does not encompass the entirety of Yan's misconduct before this Court, and so Rule 11's sanctions authority does not adequately address all the misconduct at issue. This case has barely progressed past the pleading stage because Yan has failed to comply with Court orders and missed numerous deadlines. Yan has wasted the Court's and Forious' time and resources. She has requested extensions and let those pass, claiming an interest in settlement or a focus on resolving claims against other Defendants as an excuse. She has continued to obfuscate the relationship between Yan, Heshan KES, and the KES Amazon store. Despite the Court giving Yan numerous opportunities to come clean about this relationship, she has continued to avoid doing so, exhibiting bad faith in an attempt to avoid the consequences of her own actions in bringing this lawsuit without adequate investigation and resources. Her stories about the ownership structures have come closer to the truth as Forious has uncovered additional evidence, but even to this day, the Court does not believe that it has the full picture. First, in connection with her complaint and TRO motion, Yan appeared to acknowledge that she owned Heshan KES and the KES Amazon store. Then after she could not post the increased bond and Forious sought to freeze the assets of the KES Amazon store, Yan denied any ties to Heshan KES but did not deny that Heshan KES owned or controlled the KES Amazon store. But after the Court ordered jurisdictional discovery and Forious discovered legal documents showing that Yan owns Heshan KES, Yan and Heshan KES again changed their story and represented that a different entity, KES Hili Inc., owns the KES Amazon store despite the KES Amazon store identifying Heshan KES as the owner. KES Hili Inc. is fully owned by the minority stockholder of Heshan KES. Yan represents that the

identification of Heshan KES as the owner of the KES Amazon store resulted from an identification mistake that no one sought to correct for at least six years, if not more. Yan also represents that she has not received any income from Heshan KES and that it operates independently, despite the fact that she owns over 99% of its shares. Not only do these representations strain credulity, but they also appear to be part of Yan's strategy to avoid taking responsibility for her abuse of the judicial process. As Yan tells it, she initiated this litigation without the understanding that she might have to expend her own resources to prosecute the case. But as part of seeking preliminary relief, Yan needed to post a bond to protect the enjoined defendants in case of a wrongful restraint. If Yan had a strong belief in her claims against Forious, she would have found a way to post the increased bond the Court ordered instead of running away from the injunction. And Yan's subsequent conduct reflects not a good faith attempt to comply with the Court's orders but rather consistent attempts to deflect and distract so as to delay or even fully avoid responsibility for the damages that Forious incurred during the restraint period. Her actions cannot be excused as clumsy lawyering or mere ignorance of the law because she is a Chinese citizen.

      Having found that Yan engaged in sanctionable conduct, the Court must determine the appropriate sanction to impose. The Court has given Yan many opportunities to avoid sanctions and rectify her litigation misconduct, but at this stage, the Court sees no alternative but to dismiss Yan's claims against Forious and the remaining Defendants with prejudice as a sanction for her misrepresentations, deliberate disregard of Court orders, and abuse of the judicial process. *See Ayoubi v. Dart*, 640 F. App'x 524, 528–29 (7th Cir. 2016) ("[A] dismissal with prejudice is an appropriate sanction for lying to the court in order to receive a benefit from it, because no one needs to be warned not to lie to the judiciary."). Such a dismissal will not only "deter future misbehavior" but also "punish[es] the serious misconduct here." *Xped LLC v. Entities Listed on Exhibit 1*, 690 F. Supp. 3d 831, 860 (N.D. Ill. 2023). The Court does not believe that any lesser sanction would appropriately address Yan's misconduct, given its ongoing and continued nature despite the Court's many prior warnings about her conduct of the litigation. For example, on November 5, 2024, the Court noted that its "patience with this case [was] coming to a close." Doc. 129 at 6:4. On November 20, 2024, the Court stated that the case had "gotten to be much more complicated and a mess," and that the Court had "given [Yan] and [counsel] plenty of warning along the way that this case and whatever litigation strategy was behind it [was] quickly going to spiral out of control and in a direction that [they] don't want and didn't anticipate" and that they had reached that point. Doc. 128 at 5:5–11. The Court also noted that it had no interest in engaging in a "shell game where [Yan] is trying to avoid paying for the damages that were caused by a TRO that [she] knew or should have known should not have been entered." *Id.* at 7:20–23. On March 19, 2025, the Court remarked that the case "is replete with delays on the part of [Yan], with refusal to follow court orders . . . , and it appear[ed] . . . that for whatever reason [Yan] did not anticipate that there would be a defendant that would actually fight back and advocate for itself." Doc. 158 at 3:17–21. The Court also noted that it was "contemplating sanctions for . . . plaintiff's continued pattern of ignoring court orders which are documented throughout this case." *Id.* at 6:19–21; *see also* Doc. 139 ("The Court is contemplating sanctions for Plaintiff's continued pattern of ignoring Court orders."). Finally, at the April 8, 2025 hearing, the Court noted that Yan's "story has changed multiple times over time, and it has wasted this Court's time, wasted resources, and frankly is sanctionable. If there weren't

counterclaims here, [the Court] would dismiss the case with prejudice as a sanction." Doc. 159 at 7:16–20.

That said, the Court does not find it appropriate to award Forious its attorney's fees and costs or to enter sanctions against Yan's counsel pursuant to 28 U.S.C. § 1927. The dismissal with prejudice not only punishes Yan's misconduct but also should serve as a deterrent to future misconduct by both Yan and her counsel. While the Court acknowledges that Forious has had to expend additional fees to address Yan's misconduct, the Court finds that the dismissal of Yan's claims and Forious' potential recovery on the bond sufficiently address the sanctionable conduct in this case. Therefore, pursuant to Rule 11 and the Court's inherent authority, the Court dismisses Yan's claims with prejudice but denies Forious' requests for the imposition of other sanctions on Yan and her counsel.

### III. Heshan KES' Motion to Dismiss the Third-Party Complaint

Finally, the Court turns to Heshan KES' motion to dismiss Forious' third-party complaint against it. Forious filed a counterclaim against Yan, seeking a declaratory judgment of invalidity and non-infringement of the '293 Patent. It also filed a third-party complaint against Heshan KES, claiming that Yan and Heshan KES tortiously interfered with Forious' prospective business relations. Heshan KES argues that the Court should dismiss Forious' tortious interference claim against it for lack of subject matter jurisdiction, lack of personal jurisdiction, failure to state a claim, and insufficient service.

Turning first to subject matter jurisdiction, no one disputes that the Court has original jurisdiction over Forious' patent claims against Yan. "Section 1367 lays out a framework by which courts may exercise supplemental jurisdiction over state law claims that share 'a common nucleus of operative facts' with a federal claim properly brought before the court." *Bailey v. City of Chicago*, 779 F.3d 689, 696 (7th Cir. 2015) (quoting *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 500 (7th Cir. 1999)). Under § 1367, supplemental jurisdiction extends to "claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a). "A loose factual connection between the claims is generally sufficient." *Ammerman v. Sween*, 54 F.3d 423, 424 (7th Cir. 1995). Forious' tortious interference claim derives from Yan's assertion of an infringement claim against Forious and Heshan KES' alleged involvement in pursuing that claim. Yan does not object to the Court's exercise of supplemental jurisdiction over this claim, and the Court similarly finds it appropriate to allow Forious to pursue this claim against the two parties together. Therefore, at this time, the Court finds it appropriate to exercise supplemental jurisdiction over the tortious interference claim.

As for personal jurisdiction, Forious has adequately established a prima facie case of personal jurisdiction over Heshan KES. *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392–93 (7th Cir. 2020) (where district court does not hold an evidentiary hearing on a motion to dismiss for lack of personal jurisdiction, the plaintiff need only establish a prima facie case of personal jurisdiction). The Court cannot exercise jurisdiction over Heshan KES unless it has "certain minimum contacts with [Illinois] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Millikin v. Meyer*, 311 U.S. 457, 463 (1940)). Minimum contacts exist

where "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017). As relevant here, Heshan KES must have purposefully directed its activities at Illinois or purposefully availed itself of the privilege of conducting business in Illinois, and Forious' alleged injury must arise out of or relate to Heshan KES' forum-related activities. *See Rogers v. City of Hobart*, 996 F.3d 812, 819 (7th Cir. 2021).

Despite Heshan KES' attempts at distancing itself from Yan and this litigation, as the Court has already noted above, Yan owns almost all of the shares of Heshan KES. Yan and Heshan KES collaborated in an effort to stifle competition for faucets similar in design to that represented in the '293 Patent, with Heshan KES sending a cease-and-desist letter to Forious before Yan filed this action. Yan and Heshan KES chose Illinois as the forum for Yan to file suit against Forious, which led to the issuance of the TRO and the restraint on Forious' ability to sell its faucets on Amazon and Wayfair. By injecting itself into this litigation, which has caused Forious' injury, Heshan KES has purposefully directed its activities at Illinois. The Court also does not find that maintaining jurisdiction over Heshan KES would offend traditional notions of fair play and substantial justice, given Illinois' interest in ensuring that its court systems are not used for improper purposes. *See Curry*, 949 F.3d at 402 (courts should take into account the state's interest in adjudicating the dispute, among other factors). Therefore, the Court finds it appropriate to exercise jurisdiction over Heshan KES with respect to Forious' tortious interference claim.

But Heshan KES does have a winning argument with respect to the viability of Forious' tortious interference claim. Forious alleges that Yan and Heshan KES interfered with Forious' business relationships with Amazon and Wayfair "by asserting objectively baseless design patent infringement claims, which caused Amazon.com and Wayfair.com to remove FORIOUS' product listings for the Accused FORIOUS Products." Doc. 59 at 22. Illinois, however, only allows a plaintiff alleging the wrongful filing of a lawsuit to bring a claim for malicious prosecution, abuse of process, or the filing of the suit without the plaintiff's knowledge or consent. *Weston v. DB Private Wealth Mortg., Ltd.*, No. 22 CV 6139, 2023 WL 4864995, at *4 (N.D. Ill. July 31, 2023) (collecting cases). Forious responds that the "gravamen" of its claim does not involve the "wrongful filing of a lawsuit" but instead Yan and Heshan KES "deliberately manipulating both the Court and Amazon/Wayfair to disrupt Forious' business relationships" by "presenting an infringement claim they knew to be baseless and by making fact representations to the Court that they now disclaim," leading to the issuance of the TRO. Doc. 119 at 7–8. But this rephrasing does nothing to change the fact that Forious' focus is on Yan and Heshan KES' use of litigation to harm Forious. As such, Forious' tortious interference claim cannot proceed.[3] *See Weston*, 2023 WL 4864995, at *4 (dismissing tortious interference claim that the plaintiff based not on pre-litigation conduct but on the defendant's efforts to foreclose on a property in state court).

---

[3] Yan did not seek dismissal of the tortious interference claim against her, but the same reasoning would apply to warrant dismissal of the claim Forious has asserted against her. In light of the Court's dismissal of Yan's claims against Forious and Forious' tortious interference claim against Heshan KES, Yan and Forious should be prepared to address their plans to resolve the remaining counterclaims against Yan, as well as any request Forious may make for recovery against the bond, at the next status hearing.

Because Forious cannot proceed on its tortious interference claim against Heshan KES, the Court dismisses the third-party complaint against Heshan KES without prejudice.[4]

Date: July 25, 2025                                                                  /s/__Sara L. Ellis_____

---

[4] Because the Court dismisses the third-party complaint, the Court need not address Heshan KES' argument that Forious improperly served it with the third-party complaint.